# Exhibit A



*Payne Richards*
*& Associates*

**I.**

This agreement into by and between **Dominick Desimone** hereinafter referred to as "Claimant," and Payne Richards & Associates, hereinafter referred to as "Agent." Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.

**II.**

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s): **DOMINICK DESIMONE**
Owner's Reported Address: **845 CROSS ST, PHILADELPHIA, PA**
Reported By: **UNIVERSITY OF THE ARTS**
Property Type: **WAGES; PAYROLL UNCLAIMED**
Amount: **$841.97**
Property ID No: **20337856**
Payne Richards & Associates Reference No: **9351164**

**III.**

In consideration of Agent's reasonable efforts in providing services including but not limited to; ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of 15% of the amount recovered.

**IV.**

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

**V.**

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

**VI.**

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered and all fees are paid. Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent: Payne Richards & Associates   Address: 3801 Pegasus Drive Suite 101 Bakersfield, CA 93308

Daytime Phone: (661) 399-1108   Date: 5/16/2018

Agent's Tax ID No: EIN# 05-0614871   Registration No. D98C131-0315   Agent's Signature: _Paul Hoshi_

Print Name: DOMINICK DESIMONE   Date: 5/31/18
Address: 845 CROSS STREET PHILa. Pa 19147
E-mail: _____
Daytime Phone: (267) 444-1576
Signature: X _Dominick De Simone_   Relationship: ☑Self ☐Heirs ☐POA ☐Executor

**PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY PUBLIC**

State of PA
County of Phila

Before me, the undersigned authority, on this day personally appeared DOMINICK DESIMONE ; known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS 31ST DAY OF May , 2018

Notary Public in and for the State of PA
My commission expires: Nov 2019

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
LANCESS S. WILLIAMS, Notary Public
City of Philadelphia, Phila. County
My Commission Expires November 20, 2019

Exhibit B



**I.**

This agreement into by and between **Dominick Desimone** hereinafter referred to as "Claimant," and Payne Richards & Associates, hereinafter referred to as "Agent." Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.

**II.**

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s): **DOMINICK DESIMONE**
Owner's Reported Address: **845 CROSS ST, PHILADELPHIA, PA**
Reported By: **ARAMARK**
Property Type: **WAGES; PAYROLL UNCLAIMED**
Amount: **$469.10**
Property ID No: **24159865**
Payne Richards & Associates Reference No: **9896080**

**III.**

In consideration of Agent's reasonable efforts in providing service, including but not limited to, ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of 15% of the amount recovered.

**IV.**

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

**V.**

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

**VI.**

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered and all fees are paid. Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent: Payne Richards & Associates  Address: 3801 Pegasus Drive Suite 101 Bakersfield, CA 93308

Daytime Phone: (661) 399-1108    Date: 3/28/2019

Agent's Tax ID No.: EIN# 05-0614871   Registration No. 0980131-0315   Agent's Signature: _Paul Hahi_

Print Name: DOMINICK DESIMONE   Date: 4/17/19
Address: 845 CROSS ST Phila Pa 19147
E-mail:
Signature: _Dominick DeSimone_   Daytime Phone: 267-444-1576
Relationship: [X] Self [ ] Heirs [ ] POA [ ] Executor

**PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY PUBLIC**

State of PA
County of Phila

Before me, the undersigned authority, on this day personally appeared DOMINICK DESIMONE, known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS 17th DAY OF April, 2019

_Celeste Cerino_
Notary Public in and for the State of PA
My commission expires: 6/2/22

Commonwealth of Pennsylvania - Notary Seal
CELESTE CERINO, Notary Public
Philadelphia County
My Commission Expires June 2, 2022
Commission Number 1256191

Exhibit C

| | |
|---|---|
| **From:** | David Schlosser |
| **Sent:** | Tuesday, November 12, 2019 5:07 PM |
| **To:** | 'austin@stackhousegroup.com' |
| **Cc:** | William Palmer |
| **Subject:** | Dominick DeSimone |
| **Attachments:** | 11 12 2019 Hashim re LT Andrew Austin with Exhibits.pdf |

Dear Mr. Austin:

Please find attached correspondence being sent on behalf of Mr. Palmer and our clients.

Sincerely,

David Schlosser
*Paralegal and Assistant to Mr. Palmer*



PALMER
L·A·W   G·R·O·U·P

2443 Fair Oaks Boulevard, No. 545
Sacramento, California 95825
Phone 916-972-0761 Fax 916-917-5397
dschlosser@palmercorp.com
http://www.palmercorp.com



# PALMER

L A W   G R O U P

A PROFESSIONAL LAW CORPORATION

2443 FAIR OAKS BOULEVARD, NO. 545
SACRAMENTO, CALIFORNIA 95825
TELEPHONE (916) 972 0761 FACSIMILE (916) 917 5397
EMAIL: WPALMER@PALMERCORP.COM

November 12, 2019

## VIA ELECTRONIC AND PRIORITY MAIL

Andrew B. Austin, Esq.
Stackhouse Group
P.O. Box 54628
Philadelphia, Pennsylvania 19148

**Re.:**  *Dominick DeSimone Invoice No. 9896080*

Dear Mr. Austin:

We reviewed your November 5, 2019 correspondence, which is attached as Exhibit A to this letter. A copy of the agreements which were signed by your client Mr. Dominick DeSimone are attached collectively as Exhibit B. As noted in these contracts, the location, estimated amounts, account numbers, etc., were fully disclosed to Mr. DeSimone. The applicable state law is found at 72 P.S. § 1301.11. Section 1301.11(g)(2) provides that companies and individuals such as Payne Richards & Associates are authorized to charge a 15% (fifteen percent) fee. A copy of the applicable law is attached as Exhibit C and is found and discussed on the agency's public website found at: https://www.patreasury.gov/unclaimed-property/finder/.

Given the above, to the extent that you have any information that our clients have violated any state or federal law, then please forward it to our attention and we will review the information.

In the meantime, and as a courtesy to you and your law firm, we urge you to carefully undertake due diligence before filing any action against our clients. In the event that such a frivolous action was filed, then we would be forced to seek all fees and costs from Mr. Dominick DeSimone and your firm. A copy of our background is attached as Exhibit D and we will of course seek admission into the jurisdiction as *pro hac vice* counsel, if it becomes necessary to do so.

As always, please do not hesitate to contact us directly with your questions, suggestions, or concerns.

Very truly yours,

William W. Palmer

Exhibit A

**Andrew B. Austin**, Esq.
P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@stackhousegroup.com

Ms. Shirley Wysinger
Payne Richards & Associates
3801 Pegasus Drive #101
Bakersfield, California 93308
shirleyw@usclaimsservices.com

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Tuesday, November 5th 2019

**RE:**    #9896080 — Dominick DeSimone

Ms Wysinger:

I am writing on behalf of my client, Mr. Dominick DeSimone, of 845 Cross Street, Philadelphia, Pennsylvania, and your Invoice #9896080 dated 9/17/2019.

As an initial matter, you are hereby instructed to **immediately cease and desist** any further attempts at recovering your alleged "debt" owed by Mr. DeSimone, which includes any collections actions by you or a third party.

After speaking with my client about this "debt," and reviewing your predatory and deceptive business practices, I have determined that your "contract" is invalid as a matter of public policy under Pennsylvania Law, specifically the Unfair Trade Prac-

1

**Payne Richards & Associates**                           Tuesday, November 5th 2019

tices Consumer Protection Law, 73 P.S. §§ 201–1 *et seq.* as your actions were intentionally deceptive with respect to your charging a fee to 'assist' my client in recovering money he was rightfully entitled to for free. While I acknowledge that Mr. Paul Hashim is a 'registered finder' with the Pennsylvania State Treasurer, I neither believe that his registration extends to Payne Richards as an entity nor does that give you license to deceive Pennsylvania consumers.

Further, you are hereby noticed that Mr. DeSimone intends to pursue Payne Richards & Associates, Mr. Paul Hashim, and yourself (both in your personal capacities), and any other associated entities and/or persons for your illegal acts, which may include a nationwide class-action under state UDAP statutes and a federal Civil RICO for your mail– and wire– fraud as part of your wrongful scheme to defraud individuals of the full amount of monies they are entitled to, and any damages they may have suffered as a result, as well as punitive/trebled damages, any statutory damages, interest, and attorney's fees.

In the interests of judicial economy and a rapid resolution to Mr. DeSimone's claims, he is willing to settle for $2,500 and my attorneys' fees of $2,500. This offer expires November 14th 2019 at 5:00 PM EST, upon the initiation of any further contact with my client or after any derogatory act taken by you against him.

Thank you for your time and I look forward to hearing from you promptly.

Sincerely,

**Andrew B. Austin**, Esq.
*Attorney for Domick DeSimone*

2

Exhibit B



**I.**

This agreement into by and between **Dominick Desimone**, hereinafter referred to as "Claimant," and Payne Richards & Associates, hereinafter referred to as "Agent." Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.

**II.**

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s): **DOMINICK DESIMONE**
Owner's Reported Address: **845 CROSS ST, PHILADELPHIA, PA**
Reported By: **ARAMARK**
Property Type: **WAGES; PAYROLL UNCLAIMED**
Amount: **$469.10**
Property ID No: **24159865**
Payne Richards & Associates Reference No: **9896080**

**III.**

In consideration of Agent's reasonable efforts in providing services, including but not limited to ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of 15% of the amount recovered.

**IV.**

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

**V.**

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

**VI.**

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered and all fees are paid. Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent: Payne Richards & Associates  Address: 3801 Pegasus Drive Suite 101 Bakersfield, CA 93308

Daytime Phone: (661) 399-1108     Date: 3/28/2019

Agent's Tax ID No.: EIN# 05-0614871   Registration No. 0980131-0315   Agent's Signature: _Paul Hrabi_

Print Name: _DOMINICK DESIMONE_   Date: _4/17/19_
Address: _845 CROSS ST Phila Pa 19147_
E-mail: _____   Daytime Phone: _267-444-1576_
Signature: _Dominick DeSimone_   Relationship: ☒Self ☐Heirs ☐POA ☐Executor

**PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY PUBLIC**

State of _PA_
County of _Phila_

Before me, the undersigned authority, on this day personally appeared _DOMINICK DESIMONE_, known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS _17th_ DAY OF _April_, 20_19_

_Celeste Cerino_

Notary Public in and for the State of _PA_
My commission expires: _6|2|22_

> Commonwealth of Pennsylvania - Notary Seal
> CELESTE CERINO, Notary Public
> Philadelphia County
> My Commission Expires June 2, 2022
> Commission Number 1256191



**I.**

This agreement into by and between **Dominick Desimone** hereinafter referred to as "Claimant," and Payne Richards & Associates, hereinafter referred to as "Agent." Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.

**II.**

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s): **DOMINICK DESIMONE**
Owner's Reported Address: **845 CROSS ST, PHILADELPHIA, PA**
Reported By: **UNIVERSITY OF THE ARTS**
Property Type: **WAGES; PAYROLL UNCLAIMED**
Amount: **$841.97**
Property ID No: **20337856**
Payne Richards & Associates Reference No: **9351164**

**III.**

In consideration of Agent's reasonable efforts in providing services (including but not limited to, ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of 15% of the amount recovered.

**IV.**

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

**V.**

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

**VI.**

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered and all fees are paid. Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent: Payne Richards & Associates  Address: 3801 Pegasus Drive Suite 101 Bakersfield, CA 93308

Daytime Phone: (661) 399-1108    Date: 5/16/2018

Agent's Tax ID No: EIN# 05-0614871   Registration No. 098C131-3315   Agent's Signature: _Paul Hoshi_

Print Name: _DOMINICK DESIMONE_   Date: _5/31/18_

Address: _845 CROSS STREET Phila. Pa 19147_

E-mail:                                           Daytime Phone: _(267) 444-1576_

Signature: X _Dominick De Simone_   Relationship: [✓]Self [ ]Heirs [ ]POA [ ]Executor

**PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY PUBLIC**

State of _PA_
County of _Phila_

Before me, the undersigned authority, on this day personally appeared _DOMINICK DESIMONE_ ; known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS _31ST_ DAY OF _May_ , _2018_

_____
Notary Public in and for the State of _PA_
My commission expires: _Nov 2019_

**COMMONWEALTH OF PENNSYLVANIA**
**NOTARIAL SEAL**
**LANCESS S. WILLIAMS, Notary Public**
**City of Philadelphia, Phila. County**
**My Commission Expires November 20, 2019**

Exhibit C

# Pennsylvania Statutes Title 72 P.S. Taxation and Fiscal Affairs § 1301.11 | FindLaw

(a)  Every person holding property which became subject to custody and control of the Commonwealth under this article during the preceding year shall report to the State Treasurer as hereinafter provided.

(b)  The report shall be verified and shall include:

1.  Except with respect to travelers checks and money orders, the name, if known, and last known address, if any, of each person appearing from the records of the holder to be the owner of any property of the value of fifty dollars ($50) or more;

2.  The nature and identifying number, if any, or description of the property and the amount appearing from the records to be due, except that items of value under fifty dollars ($50) each may be reported in the aggregate;

3.  The date when the property became payable, demandable, returnable or the date upon which the property was declared or found to be without a rightful or lawful owner, and the date of the last transaction with the owner with respect to the property; and

4.  Other information consistent with law which the State Treasurer prescribes by regulations as necessary for administration of this article.

(c)  If the person holding property subject to custody and control of the Commonwealth under this article is a successor to other persons who previously held the property for the owner, or if the holder has changed his name while holding the property, he shall file with his report all prior known names and addresses of each holder of the property.

(d)  The report shall be filed on or before April 15 of the year following the year in which the property first became subject to custody and control of the Commonwealth under this article.  The State Treasurer may postpone for a period not exceeding six (6) months the reporting date upon written request by any person required to file a report.

(e)  Verification, if made by a partnership, shall be executed by a partner;  if made by an unincorporated association or private corporation, by an officer;  and if made by a public corporation, by its chief fiscal officer;  if made by a court, by an officer of the court;  and if made by a public officer of the United States, of the Commonwealth of Pennsylvania or any political subdivisions thereof or of any other state or political subdivision thereof, by that public officer.

(f)  Subsequent to the filing of the reports required by this section, the State Treasurer shall compile a list of the abandoned and unclaimed property contained in the reports.  The listing shall contain the names, items of property and last known addresses, if any, of the owners listed in the reports.  The State Treasurer shall, after the notification period provided for in section 1301.12, make the listing available for examination, inspection or copying at fees to be determined by the State Treasurer.

(g)  All agreements or powers of attorney to recover or collect abandoned and unclaimed property contained in the reports filed under this article shall be valid and enforceable only if the agreements:

1.  are in writing and duly signed and acknowledged by the owner;

2.  clearly state the fee or compensation to be paid, which shall not exceed fifteen per centum of the value of the abandoned and unclaimed property;

3.  disclose the nature and value of the property;

4.  disclose the name and address of the holder and, if known, whether the abandoned and unclaimed property has been paid or delivered to the State Treasurer;

5.  identify the name, address and telephone number of the person assisting in the location, delivery or recovery of the abandoned and unclaimed property;  and

Case 2:20-cv-03812-GJP    Document 1-1    Filed 08/05/20    Page 16 of 93

6.   identify the valid certificate of registration number assigned to the person assisting in the location, delivery or recovery of the abandoned and unclaimed property under section 1301.11a.

(i)  Subsection (g) shall not apply to any agreement or power of attorney entered into between the personal representative, guardian, trustee or other person in a representative capacity to the owner of the property in which such person has an interest for a fixed fee or hourly or daily rate not contingent upon the discovery of property or the value of property discovered:  Provided, however, That any such agreement under this subsection for the purpose of evading the provisions of subsection (g) shall be void.

(j)  Nothing in this section shall be construed to prevent an owner from asserting at any time that any agreement to locate or reveal abandoned and unclaimed property reported to the State Treasurer is based on an excessive or unjust consideration.

(k)  To the maximum extent feasible, the State Treasurer shall be entitled to request and receive and shall utilize and be provided with such facilities, resources and data of any court, department, division, board, bureau, commission or agency of the Commonwealth or any political subdivision thereof as it may reasonably request to carry out properly its powers and duties hereunder.

Exhibit D

## WILLIAM W. PALMER
### Summary

This summary provides an overview of significant work including published decisions from the United States Supreme Court, published and unpublished state and federal decisions, published writings, and transactional work.

### Overview

- **Administrative Regulations:** Mr. Palmer served as the General Counsel (or lead attorney) on insurance and later Chief of Staff for the California Department of Insurance, which is the government agency that regulates insurance in the State of California. Mr. Palmer re-worked the Unfair Claims Regulations with senior staff counsel from the California Department of Insurance to become the "Fair Claims Regulations." The Fair Claims Regulations (Cal. Code Regs. Tit. 10, § 2695.1 (1995)), guide and control the timing, payment, and grievance resolution of property casualty insurance claims in the State of California. California is the largest insurance market in the United States of America and controls 20-25% of the insurance business of this country. Mr. Palmer authored a law review article, which was published and may be found at: William W. Palmer, "Proposed Unfair Claims Regulations" (1996) 36 Santa Clara Law Review 687, which explains the operation of the Fair Claims Regulations.

- **Unclaimed Property Law and Litigation:** Mr. Palmer prevailed in a series of federal cases that challenge the Constitutionality of California's Unclaimed Property Law with litigation pending against current California Controller John Chiang. These cases challenge California's mishandling of public and private funds. The litigation resulted in the issuance of a federal injunction for violations of the United States Constitution that forced the California Legislature to rewrite and to "reform" the California Code of Civil Procedure sections 1300, *et seq.*, which were then signed into law by Governor Schwarzenegger on August 23, 2007. *See, for example*, Mr. Palmer's published decisions in: *Suever v. Westly*, 439 F. 3d 1142 (9th Cir. 2006) ("*Suever I*"); *Taylor v. Westly* 402 F.3d 924 (9th Cir. 2005) (Kleinfeld, J.), *reh'g denied, reh'g en banc denied* ___ F.3d ___ (May 13, 2005) ("*Taylor I*") (The Ninth Circuit denied the Controller's petition for rehearing and rehearing *en banc* with the added comment that the panel circulated the petition to all the 58-judges of the Ninth Circuit and "not a single judge" wished to rehear the case); *Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007) ("*Taylor II*") (Directing the District Court to enter a preliminary injunction enjoining Defendants from accepting property under color of the UPL until Controller satisfies Due Process Clause.); *see also, Taylor v. Westly*, Order Re: Preliminary Injunction, No. Civ. 01-2407 WBS (E.D. Cal. June 1, 2007) (Enjoining the California Controller from taking possession of or title to any additional property under color of the Unclaimed Property Law until the Court has approved regulations satisfying the Due Process Clause in accordance with directive of *Taylor II*); *Taylor v. Westly*, Consolidated Appeals 07-16902 and 07-

October 14, 2019

17223, Slip Op. at 5313-14, published as 525 F.3d 1288, 1291 (9th Cir. May 12, 2008) ("*Taylor III*") (This decision awarded Mr. Palmer's law firm all of its interim fees for the 7 years' of work on the *Taylor* case); *Taylor v. Chiang*, 405 F. App'x 167 (9th Cir. 2010)("*Taylor IV*"); *Taylor v. Yee* U.S. Supreme Court Docket No. 15-169; *Suever v. Westly*, 579 F.3d 1047, 1057 (9th Cir. 2009) ("*Suever II*"); *Suever v. Connell*, 484 F. App'x 187 (9th Cir. 2012) ("*Suever III*"); *Suever v. Connell*, 133 S. Ct. 1243, 185 L. Ed. 2d 178 (2013) ("*Suever IV*"); *Harris, et. al. v. Westly* (2004) 116 Cal. App. 4th 214; *and see Fong v. Westly* (2004) 117 Cal. App. 4th 841; *Harris v. Verizon* (2006) 141 Cal. App. 4th 573.

Mr. Palmer has successfully represented small and large businesses, including Fortune 500 companies, during Unclaimed Property audits conducted by the Controller.

Mr. Palmer prevailed in one of the leading published decisions involving shareholder stock rights during the Unclaimed Property transfer process in *Vondjidis v. Hewlett Packard Corp.* (2008) 168 Cal. App. 4th 921, affirmed and remanded by Supreme Court at 100 Cal. Rptr. 3d 447; *see also Azure, Ltd. v. I-Flow Corp.* (2009) 46 Cal. 4th at 1335-1336 (July 16, 2009) (*Amicus Curiae* or "friend of the court" brief filed).

- **Legal Work in Iraq:** Mr. Palmer worked in Iraq during March – April 2006.

- **Additional Appearances in other Nations:** In October 2015 Mr. Palmer was selected from among a pool of applicants to act as a Senior Consultant to the United Nations in the South Pacific where he will be responsible for drafting laws among several island nations. In addition to this project and his work in Iraq, Mr. Palmer has appeared and represented California and United States before the Governments of Germany, France, the United Kingdom, Israel, Russia, and China.

  Mr. Palmer presented two papers on the financial structure and purpose of the California Earthquake Authority (CEA), and a second paper on predictions and improvements to California insurance underwriting at the International Catastrophic Insurance Seminar in Beijing, China. He was awarded with a commemorative gift for his participation by the Chinese government.

- **Holocaust Insurance Litigation and Reparations Treaties:** Mr. Palmer wrote the "Fifteenth Annual International Law Symposium Nazi Gold and Other Assets of the Holocaust: *What Happens Next?*," 20 Whittier Law Review 122 (1998). This law review article provides a detailed plan for the resolution of the life and property casualty insurance benefits owed to victims of the Holocaust atrocities and genocide.

  Mr. Palmer then wrote the Budget Change Proposal (or BCP) for the State of California that created the funding mechanism for the plan, which was folded into

Senator Tom Hayden's Senate Bill (SB 1530) that allowed California to create the International Holocaust Commission. This piece of legislation, carried by Senator Hayden (D), was signed into law by Governor Pete Wilson (R). Amazingly, Sen. Hayden, who was known as a Vietnam War activist, and Governor Wilson, a United States Marine who served in Vietnam, had not spoken with one another during Governor Wilson's entire term in office, but both supported this piece of legislation. Mr. Palmer was presented with the Governor's signing pen and the original legislation as a gift recognizing his work on creating the law.

The Holocaust Insurance reparations law, prepared by Mr. Palmer, was later endorsed by Presidents Clinton and Bush, and the law was reviewed by the United States Supreme Court, and found to be constitutional in *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003). Mr. Palmer worked in the United States and overseas in Europe, *pro bono* (at his cost), to implement SB 1530, and was later called as one of the lead witnesses in the *AIA v. Garamendi* case, as discussed above. Prime Minister of Israel, Benjamin Netanyahu thanked Mr. Palmer in a personal letter (dated May 2, 1999) for his "determined efforts to achieve justice on the issue of Holocaust Era Insurance Claims."

- **Complex Life Insurance Litigation.** In December 2014, Mr. Palmer prevailed in a large life insurance case involving a murder in Mexico. The case played out in Sacramento Superior (Probate) Court as well as the United States Eastern District Federal Court. Using California's "Slayer Statutes," Mr. Palmer prevailed in both venues, and settled the case for $2.3 million.

- **Restructuring of Lloyd's of London:** Mr. Palmer was the attorney responsible for coordinating the litigation and restructuring of Lloyd's of London ($24 billion, approx.) that protected consumers and policyholders in California and the United States. *See, for example,* Mr. Palmer's appearance in the published decision of *Allen v. Lloyd's of London*, 94 F.3d 923 (4th Cir. 1996) (Held: The policies of the United States securities laws did not override the parties' choice of forum and law for resolving disputes; thus, the contractual provisions selecting the law of and a forum in the United Kingdom were enforced).

Mr. Palmer was presented with a small commemorative plate in London by Sir David Rowland, the Chairman of Lloyd's, who was later knighted by the Queen of England for his role in strengthening this famous syndicate of English companies. Mr. Palmer served in the United States as the lead attorney responsible for negotiating a Memorandum of Understanding between the Department of Corporations and the Department of Insurance in the Governor's Office that allowed each agency to oversee and regulate Lloyd's of London. Based primarily on his work on behalf of California and the United States, Mr. Palmer was presented with the flag flown over the State of Texas by the Insurance Commissioner of Texas, followed by a short meeting with the former Texas Governor George W. Bush.

October 14, 2019

- **Executive Life Insurance Company (ELIC):**  Mr. Palmer testified on behalf of the California Department of Insurance in *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003) (discussed below), and in Commissioner John Garamendi's case involving the Executive Life Insurance Company (ELIC) and a French investment consortium. The case resulted in roughly a $1 billion judgment following a jury trial on behalf of the ELIC policy holders and claimants.

- **California Homeowner's Insurance Market:**  Mr. Palmer worked on the restructuring of the private California Homeowner's Insurance Market and avoided its collapse by assisting (in a minor role) with the creation the California Earthquake Authority (or CEA), a $12 billion dollar, vertical and horizontally risk-layered, government/private sector business entity.  Mr. Palmer received an award recognizing his work.  Mr. Palmer presented a paper on the subject of the CEA to the Chinese Bank and Insurance Company in Beijing, China.

- **Demutualization of California's Largest Mutual Insurance Company:**  Mr. Palmer was responsible for leading California's legal team effort to successfully demutualize and restructure Pacific Mutual Life Insurance Company into Pacific Life Insurance Company. Pacific Life is one of California's largest, most successful, and best run life insurance companies with significant assets, making it one of the largest companies of its kind in the world. Most important, Mr. Palmer worked to create safeguards and to protect the policyholders within a unique "closed block" that preserved their ownership and equity rights in the former mutual company. As a mutual company, the former policyholders were also owners of the company, and these rights could have been lost when the company underwent its restructuring.  Ultimately, Pacific Life was the only demutualization that was not challenged and sued in a class action by the trial bar during that period of time; roughly 19 other similar transactions were either sued or halted.

- **Significant Transactional Experience:**  Mr. Palmer has significant transactional experience and has written business plans, including a business plan that was accepted by the Fortune One Company, and has written a variety of stock purchase and redemption agreements, buy-sell agreements, creation of various business entities, mergers and acquisitions, and handled all manner of large and small business work and government filings.

Mr. Palmer has significant private practice insurance coverage experience and drafted the manuscript risk pool (insurance) coverage for roughly 180 of California's schools, including Kindergarten (K) through Ninth (9th) grades, and the Community Colleges.  Mr. Palmer has written over 300 insurance coverage analyses and opinions in plaintiff and defense cases.  He is routinely called to testify on behalf and assist the State and Federal Governments on complex insurance cases. *See, for example,* Mr. Palmer's published decision in *Downey Venture, et. al. v. LMI Ins. Co.* (1998) 66 Cal. App. 4th 478 (The court held that public policy prevented appellee insurance company from being liable for

indemnification on a malicious prosecution claim incurred by appellants, but public policy did not prevent appellee's duty to defend the claim).

- **Insurance Insolvency:**  Mr. Palmer was lead counsel for the restructuring of Golden Eagle Insurance Company that, at $1.2 billion, was one of the largest insurance insolvencies (bankruptcies) in the last decade.  Mr. Palmer successfully preserved the current business within a "New" Golden Eagle Insurance Company that was purchased for $1.2 billion by Liberty Mutual Insurance Company, while creating a massive liquidating trust.  The Golden Eagle insolvency is now used as a model for the efficient handling and resuscitation of an insurance company.

  Additional work performed in complex insurance insolvencies may be found in published and unpublished decisions in which Mr. Palmer appeared as counsel, for example, *see Quackenbush v. Mission Ins. Co.* (1998) 62 Cal. App. 4th 797 (Held:  Liquidation plan submitted by California Insurance Commissioner was approved even though objections were made that the plan required estimated payments prior to claims being established when plan provided for process to establish claims).

- **Appearances and Work Before the United States Supreme Court:**  Mr. Palmer is admitted to the United States Supreme Court and appeared in *Mission Ins. Co. v. Allstate*, 517 U.S. 706 (1996).  The case ultimately settled for full value owed to the policyholders and claimants.

  Mr. Palmer settled *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal. 4th 216, literally on the steps of the United States Supreme Court, following which the Petition for Certiorari was dismissed pursuant to Rule 46 of the Rules of the United States Supreme Court.  The settlement Mr. Palmer created, utilized a unique strategy that funded the Prop. 103 rebate to the past policyholders as required by law, while creating a financial buffer to protect the current policyholders and shareholders to fund the Northridge Earthquake claims that were still developing.  After the settlement, 20th Century Insurance Company, which was on the edge of financial insolvency, rebounded and its stock rose from $7.00 to $21.00 per share.  It remains one of California's strongest companies and employers.  Following this settlement, Mr. Palmer drafted a detailed multi-million dollar Budget Change Proposal, or "BCP," then retained ten (10) law firms and prosecuted the insurance companies that owed Prop. 103 Rollbacks, which resulted in a recovery of $1.2 Billion for the policyholders and taxpayers in the State of California.

  Mr. Palmer's appeared in the Ninth Circuit's decision in *Fireman's Fund Ins. Co. v. Quackenbush* (9th Cir. 1996) No. 92-15861, United States Court of Appeals for the Ninth Circuit, 1996 U.S. App. LEXIS 19493 (Held: The insurers' claims against the insurance commissioner's implementation of regulations were properly dismissed under the abstention doctrine, even though some were ripe, because there was a difficult and unresolved question of state law).

October 14, 2019

On August 5, 2015, Mr. Palmer recently filed a petition for certiorari with co-counsel Harvard Law School Professor Laurence H. Tribe to the United States Supreme Court in the matter of *Taylor v. Yee*, Docket No. 15-169. The case involves Constitutional claims arising from seizures of private property as "unclaimed" totaling $7 Billion from 27 million people in California and worldwide. Among the "lost and unknown" citizens are sitting and former United States Presidents Obama and Bush, the current head of the Russian government, the Queen of England, among others.

- **Pro Bono Work and Civil Rights Work:**  In addition to his pro bono work on behalf of Holocaust victims, Mr. Palmer routinely handles *pro-bono* or public service work.  As previously mentioned, Mr. Palmer's work on behalf of the Holocaust victims was performed to correct an eternal wrong committed to the face of mankind. Mr. Palmer declined all manner of gifts and remuneration.

  He received a first edition book personally autographed by Rosa Parks, entitled "Quiet Strength: The Faith, the Hope, and the Heart of a Woman Who Changed a Nation," for his assistance to one of Sacramento County's top community leaders, and minority bookstore owner Carol McNeal. Ms. McNeal's case was reported in the Sacramento Bee Newspaper and was "resolved" against an NBA basketball player to the satisfaction of the parties.

  Mr. Palmer currently is representing a group of families whose sons were taken hostage in Iraq, and were murdered during the largest kidnapping to date of Americans in Iraq in *Munns, et al v. Clinton, et al*, Easter District Court Case No. 2:10-cv-00681-MCE-EFB; Ninth Circuit Court of Appeal Case No. 12-159-69 (field April 25, 2012) . The lives of these men and the circumstances surrounding their deaths are detailed in a recent book by the Pulitzer Prize winning author Steve Fainaru entitled "Big Boy Rules, America's Mercenaries Fighting in Iraq" (Da Capo Press-Perseus Books, November 10, 2008) (hereinafter, "Big Boy Rules")

- **Actions Against State Officials for Government Records:**   Mr. Palmer routinely pursues government records requests against recalcitrant government officials and state agencies under both California Public Records Act (CPRA), Cal. Gov. Code §§ 6250, *et seq.*, and the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552, *et seq.*  Court Order issued to award fees and costs.  Contempt motion filed against Government Officials who fail to comply with Court Order. Follow through.

- **Complex Securities Cases:**  Mr. Palmer has significant experience dealing with complex securities cases.  *See, for example,* Mr. Palmer's recent successful appearances in *Tucker v. Intel Corporation*, Ninth Circuit Court of Appeals Case No. 03-17079 (SLUSA Preemption); *Harris v. Verizon Communications, Inc.*, No. 02-56335 , United States Court of Appeals for the Ninth Circuit, 84 Fed. App.

958; 2003 U.S. App. LEXIS 26502, November 4, 2003 (9th Cir. 2003)(Mr. Palmer associated into the case on appeal, wrote the appellate briefs in the class action brought on behalf of Verizon minority shareholders and overturned a lower court ruling based on ERISA preemption); *see also, Allen v. Lloyd's of London*, 94 F.3d 923 (4th Cir. 1996) (Held: The policies of the United States securities laws did not override the parties' choice of forum and law for resolving disputes; thus, the contractual provisions selecting the law of and a forum in the United Kingdom were enforced).

Mr. Palmer recently prevailed on behalf of a Greek shareholder who lives in Athens in a complex securities case entitled *Vondjidis v. Hewlett Packard Corp.*, 168 Cal. App. 4th 921 (2008), *affirmed* by the California Supreme Court at 100 Cal. Rptr. 3d 447. The matter was later settled and resolved to the mutual parties' satisfaction.

October 14, 2019

Exhibit D

| **From:** | Andrew Austin <austin@stackhousegroup.com> |
|---|---|
| **Sent:** | Wednesday, November 13, 2019 6:58 AM |
| **To:** | William Palmer |
| **Cc:** | David Schlosser |
| **Subject:** | Re: Dominick DeSimone |
| **Attachments:** | 2019-11-13.pdf |

Please see attached correspondence. Thank you.

**From:** David Schlosser <dschlosser@palmercorp.com>
**Sent:** Tuesday, November 12, 2019 8:07 PM
**To:** Andrew Austin <austin@stackhousegroup.com>
**Cc:** William Palmer <wpalmer@palmercorp.com>
**Subject:** Dominick DeSimone

Dear Mr. Austin:

Please find attached correspondence being sent on behalf of Mr. Palmer and our clients.

Sincerely,

David Schlosser
*Paralegal and Assistant to Mr. Palmer*



**PALMER**
L A W   G R O U P

2443 Fair Oaks Boulevard, No. 545
Sacramento, California 95825
Phone 916-972-0761 Fax 916-917-5397
dschlosser@palmercorp.com
http://www.palmercorp.com

1

**Andrew B. Austin**, Esq.
P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@stackhousegroup.com

**William W. Palmer**, Esq.
Palmer Law Group
2443 Fair Oaks Boulevard #545
Sacramento, California 95825

**VIA ELECTRONIC MAIL**

Wednesday, November 13th 2019

RE:   Dominick DeSimone #9896080

Mr. Palmer:

Thank you for your November 12th 2019 correspondence. You are incorrect in your interpretation of Pennsylvania law as Mr. DeSimone's claim is grounded in consumer fraud under the Pennsylvania Unfair Trade Practices Consumer Protection Law, 73 P.S. §§ 201–1 *et seq.* The finders provision of 72 P.S. § 1301.11 does not provide any shelter from Pennsylvania's consumer protection laws.

Mr. Hashim and his entity, Payne Richards & Associates, used "unfair and deceptive acts or practices" to induce my client to sign their contract, including "[k]nowingly misrepresenting that services, replacements or repairs are needed if they are not needed," § 201–2 (4) (xv), and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," § 201–2 (4) (xxi). Further, your client's use of the postal service and electronic payment methods during their fraudulent conduct expose them to liability under Civil RICO, 18 U.S.C. § 1864. Both claims are amenable as nationwide class-action claims, and carry concomitant trebled damages and attorney's fees once I prevail.

1

**William Palmer**                                      Wednesday, November 13th 2019

In addition to any monetary damages that are available, we will also seek to enjoin your clients, including Mr. Hashim, Payne Richards & Associates, and any related entities, from their deceptive practices by requiring them to include appropriate instructions with each solicitation on how a consumer can receive their property without any payment to a third-party.

Based upon your letter, please consider our previous offer rescinded. If your clients correctly wish to avoid litigation, the new settlement offer is **$25,000** with acceptance prior to **Wednesday, November 20th 2019 at 5:00 PM EST**. Otherwise we will initiate action at our pleasure in the Eastern District of Pennsylvania with a Complaint and Motion for Preliminary Injunction on behalf of the proposed class.

Thank you for your time, and I look forward to working with you on this matter.

Sincerely,

**Andrew B. Austin**, Esq.
*Attorney for Domick DeSimone*

Exhibit E

| From: | David Schlosser |
|---|---|
| Sent: | Wednesday, November 20, 2019 11:13 AM |
| To: | 'austin@stackhousegroup.com' |
| Cc: | William Palmer |
| Subject: | Dominick DeSimone |
| Attachments: | 11 20 2019 Hashim re LT Andrew Austin and Exhibit.pdf |

Dear Mr. Austin:

Please find attached correspondence being sent on behalf of Mr. Palmer and our clients.

Sincerely,

David Schlosser
*Paralegal and Assistant to Mr. Palmer*



2443 Fair Oaks Boulevard, No. 545
Sacramento, California 95825
Phone 916-972-0761 Fax 916-917-5397
dschlosser@palmercorp.com
http://www.palmercorp.com

1



# PALMER
L A W   G R O U P
A PROFESSIONAL LAW CORPORATION

2443 FAIR OAKS BOULEVARD, NO. 545
SACRAMENTO, CALIFORNIA 95825
TELEPHONE (916) 972 0761 FACSIMILE (916) 917 5397
EMAIL: WPALMER@PALMERCORP.COM

November 20, 2019

**VIA ELECTRONIC AND PRIORITY MAIL**

Andrew B. Austin, Esq.
Stackhouse Group
P.O. Box 54628
Philadelphia, Pennsylvania 19148

     **Re.:**   *Dominick DeSimone Invoice No. 9896080*

Dear Mr. Austin:

     We are struggling to understand your client Dominick DeSimone's theory and his allegations against our clients.

     It appears that Mr. DeSimone's contention is that our client Payne Richards & Associates' compliance with all features of the Pennsylvania Statutes Title 72 P.S. Taxation and Fiscal Affairs §§ 1301.1 *et seq.* (including § 1301.11), somehow renders this company in violation of multiple state and federal laws which are set forth *ad hoc* in your November 13, 2019 letter (attached, Exh. A).

     Please explain to us what, exactly, were the "unfair and deceptive acts or practices" that were used to induce Mr. DeSimone to sign the contract, including "knowingly misrepresenting the services, replacements or repairs are needed if they are not needed." The allegation does not appear to have factual and/or legal support because the location of the assets, amounts, etc., are fully disclosed on the face of the contract to Mr. DeSimone.

     The concern we have is that your law firm and Mr. DeSimone are now threatening litigation without support in the law, so that unless our clients immediately pay a large amount of money in a short amount of time then class action litigation will follow; specifically:

     "If your clients correctly wish to avoid litigation, the new settlement offer is **$25,000** with acceptance prior to **Wednesday, November 20th 2019 at 5:00 PM EST**. Otherwise we will initiate action at our pleasure in the Eastern District of

Andrew B. Austin, Esq.
**Re.:** *Dominick DeSimone Invoice No. 9896080*
November 20, 2019
Page 2 of 2

Pennsylvania with a Complaint and Motion for Preliminary Injunction on behalf of the proposed class."

Please provide your theory and the facts to support it so that we can advise our clients whether this is a legitimate claim that should be addressed through a settlement agreement.

We thank you in advance and will discuss this matter further with you. In the meantime, please do not hesitate to contact us directly with your questions, suggestions, or concerns.

Very truly yours,

William W. Palmer

WWP:ds
(w/enclosure)
cc:     Clients (w/enclosure)

Exhibit A

**Andrew B. Austin**, Esq.
P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@stackhousegroup.com

**William W. Palmer**, Esq.
Palmer Law Group
2443 Fair Oaks Boulevard #545
Sacramento, California 95825

**VIA ELECTRONIC MAIL**

Wednesday, November 13th 2019

RE:   Dominick DeSimone #9896080

Mr. Palmer:

Thank you for your November 12th 2019 correspondence. You are incorrect in your interpretation of Pennsylvania law as Mr. DeSimone's claim is grounded in consumer fraud under the Pennsylvania Unfair Trade Practices Consumer Protection Law, 73 P.S. §§ 201–1 *et seq*. The finders provision of 72 P.S. § 1301.11 does not provide any shelter from Pennsylvania's consumer protection laws.

Mr. Hashim and his entity, Payne Richards & Associates, used "unfair and deceptive acts or practices" to induce my client to sign their contract, including "[k]nowingly misrepresenting that services, replacements or repairs are needed if they are not needed," § 201–2 (4) (xv), and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," § 201–2 (4) (xxi). Further, your client's use of the postal service and electronic payment methods during their fraudulent conduct expose them to liability under Civil RICO, 18 U.S.C. § 1864. Both claims are amenable as nationwide class-action claims, and carry concomitant trebled damages and attorney's fees once I prevail.

1

**William Palmer**                                    Wednesday, November 13ᵗʰ 2019

In addition to any monetary damages that are available, we will also seek to enjoin your clients, including Mr. Hashim, Payne Richards & Associates, and any related entities, from their deceptive practices by requiring them to include appropriate instructions with each solicitation on how a consumer can receive their property without any payment to a third-party.

Based upon your letter, please consider our previous offer rescinded. If your clients correctly wish to avoid litigation, the new settlement offer is **$25,000** with acceptance prior to **Wednesday, November 20ᵗʰ 2019 at 5:00 PM EST**. Otherwise we will initiate action at our pleasure in the Eastern District of Pennsylvania with a Complaint and Motion for Preliminary Injunction on behalf of the proposed class.

Thank you for your time, and I look forward to working with you on this matter.

Sincerely,

**Andrew B. Austin**, Esq.
*Attorney for Domick DeSimone*

2

Exhibit F

| | |
|---|---|
| **From:** | Andrew Austin <austin@stackhousegroup.com> |
| **Sent:** | Wednesday, November 20, 2019 11:28 AM |
| **To:** | William Palmer |
| **Cc:** | David Schlosser |
| **Subject:** | Re: Dominick DeSimone |
| **Attachments:** | 2019-11-20.pdf |

Please see attached. Thank you.
On Nov 20, 2019, 2:12 PM -0500, David Schlosser <dschlosser@palmercorp.com>, wrote:

Dear Mr. Austin:

Please find attached correspondence being sent on behalf of Mr. Palmer and our clients.

Sincerely,

David Schlosser
*Paralegal and Assistant to Mr. Palmer*



PALMER
L A W   G R O U P

2443 Fair Oaks Boulevard, No. 545
Sacramento, California 95825
Phone 916-972-0761 Fax 916-917-5397

dschlosser@palmercorp.com

http://www.palmercorp.com

1

**Andrew B. Austin**, Esq.
P.O. Box # 54628
Philadelphia, Pennsylvania, 19148
+1 (610) 656-1956
austin@stackhousegroup.com

**William W. Palmer**, Esq.
Palmer Law Group
2443 Fair Oaks Boulevard #545
Sacramento, California 95825
wpalmer@palmercorp.com

**VIA ELECTRONIC MAIL**

Wednesday, November 20th 2019

**RE:**    Dominick DeSimone #9896080

Mr. Palmer:

Thank you for your Nov. 20th correspondence on behalf of Paul Hashim and Payne Richards & Associates. I understand your letter to be a declination of our demand.

I will be in contact in the near future with information on our filings and a request for waiver of service. I appreciate your time, and I look forward to meeting you.

Sincerely,

**Andrew B. Austin**, Esq.
*Attorney for Domick DeSimone*

1

Exhibit G

| | |
|---|---|
| **From:** | Andrew Austin <austin@stackhousegroup.com> |
| **Sent:** | Wednesday, November 20, 2019 12:45 PM |
| **To:** | William Palmer |
| **Subject:** | RE: Dominick DeSimone |
| **Attachments:** | Unfair_Trade_Practices_Consumer_Protection_Law.pdf |

This will be my last correspondence. Have a great day.

Andrew Austin
On Nov 20, 2019, 3:35 PM -0500, William Palmer <wpalmer@palmercorp.com>, wrote:

Andrew, threatening someone that you are going to file a frivolous lawsuit unless they immediately pay you $25,000 with no questions asked presents very serious problems for Dominick DeSimone and your law firm.

We are not threatening you, by any stretch. We simply asked about the legal basis for your threatened lawsuit and the facts that support Mr. Dominick DeSimone's claims. Admittedly, you are unable to provide us with anything.

I even offered to speak with you directly on the telephone and to provide you with the correct law so that Mr. DeSimone does not make a serious mistake that winds up costing him a lot of money. You are welcome to review our legal briefs and published cases. We can provide the citations for our position – but can you can provide us with yours? We asked for them.

Best regards, Bill

**William W. Palmer, Esq.**



1

2443 Fair Oaks Boulevard, No.545

Sacramento, CA 95825

Phone 916-972-0761 Fax 916-917-5397 Mobile 916-396-4266

**wpalmer@palmercorp.com**

**www.palmercorp.com**

**From:** Andrew Austin <austin@stackhousegroup.com>
**Sent:** Wednesday, November 20, 2019 12:27 PM
**To:** William Palmer <wpalmer@palmercorp.com>
**Cc:** David Schlosser <dschlosser@palmercorp.com>
**Subject:** RE: Dominick DeSimone

Thank you for your correspondence. Your continued threats are inappropriate. If your client wishes to settle, please advise, otherwise I will disregard further correspondence until after I've filed. Have a great day.

Andrew Austin

Andrew Austin

On Nov 20, 2019, 3:21 PM -0500, William Palmer <wpalmer@palmercorp.com>, wrote:

> Andrew,

> The purpose of the email and our letters is to put you and Mr. DeSimone on notice. We honestly do not understand your legal theory. The offer to provide you with facts and the correct law was to make certain that your filing is in "knowing" disregard of the law, if you blindly charge forward.

> As a colleague, I have done everything that I could to urge you to check your facts carefully and your support in the law. As you know, we have litigated these cases through many published decisions, up through and including an opinion from the United States Supreme Court. The substance of your letters alerted us to the fact that you do not understand the

2

law.  And I offered to walk you through the process so that you do not make a serious misstep.

In the end, it is not our role to tell you to make certain that you have advised Dominick DeSimone of the perils of litigation. Our client is not a large company, but is a small family-owned business, which will be forced to insist that you and Mr. DeSimone reimburse them for all legal fees, costs, and damages.

The offer to talk is still on the table.

Best regards, Bill

**William W. Palmer, Esq.**



**PALMER**
L A W   G R O U P

2443 Fair Oaks Boulevard, No.545

Sacramento, CA 95825

Phone 916-972-0761 Fax 916-917-5397 Mobile 916-396-4266

<u>wpalmer@palmercorp.com</u>

<u>www.palmercorp.com</u>

**From:** Andrew Austin <<u>austin@stackhousegroup.com</u>>
**Sent:** Wednesday, November 20, 2019 11:37 AM
**To:** William Palmer <<u>wpalmer@palmercorp.com</u>>
**Subject:** RE: Dominick DeSimone

3

Thank you for your prompt response. I don't think we have anything to discuss. If your client wishes to avoid litigation, we can reach an amicable settlement. Otherwise, I will leave it to the courts.


Have a great day.


Andrew Austin



On Nov 20, 2019, 2:29 PM -0500, William Palmer <wpalmer@palmercorp.com>, wrote:

Andrew,


I am pleased to speak with you and explain the process so that both of our clients avoid unnecessary headaches and costs.


Our clients are not a big corporation with deep pockets and lots of insurance.  So, in the event that a big, expensive federal class action lawsuit is filed, as threatened in the letters, and it does not go as Mr. DeSimone would have hoped because he did not understand the facts and the law, then our clients would expect to collect all of their attorneys' fees and costs from Mr. DeSimone.  In other words, Mr. DeSimone may face a tremendous financial downside.


Again, we are pleased to provide information and the basics as part of your law practice's necessary due diligence prior to initiating litigation; we urge you and Mr. DeSimone to do so.


Please call me at any time.


Best regards, Bill

**William W. Palmer, Esq.**



**PALMER**
L A W   G R O U P

2443 Fair Oaks Boulevard, No.545

Sacramento, CA 95825

Phone 916-972-0761 Fax 916-917-5397 Mobile 916-396-4266

wpalmer@palmercorp.com

www.palmercorp.com

---

**From:** David Schlosser <dschlosser@palmercorp.com>
**Sent:** Wednesday, November 20, 2019 11:13 AM
**To:** 'austin@stackhousegroup.com' <austin@stackhousegroup.com>
**Cc:** William Palmer <wpalmer@palmercorp.com>
**Subject:** Dominick DeSimone

Dear Mr. Austin:

Please find attached correspondence being sent on behalf of Mr. Palmer and our clients.

Sincerely,

David Schlosser
*Paralegal and Assistant to Mr. Palmer*



# PALMER
L A W   G R O U P

2443 Fair Oaks Boulevard, No. 545
Sacramento, California 95825
Phone 916-972-0761 Fax 916-917-5397

dschlosser@palmercorp.com

http://www.palmercorp.com

Exhibit H

**Andrew B. Austin**, Esq.
Pennsylvania Bar # 323768
*Attorney for Plaintiff and Proposed Class*

P.O. Box # 54628
Philadelphia, Pennsylvania 19148
+1 (610) 656-1956
austin@stackhousegroup.com



Filed and Attested by the
Office of Judicial Records
02 DEC 2019 07:18 pm
M. BRYANT

| | |
|---|---|
| Dominick **DeSimone**, *Plaintiff(s)*;<br><br>*vs.*<br><br>**U.S. Claims Services** Inc., *and* Paul **Hashim**, *Defendant(s)*. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>December Term, 2019<br>*No.* _____<br><br>CLASS ACTION,<br>JURY TRIAL DEMANDED |

## COMPLAINT—CLASS ACTION

1

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

### PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-1701

## AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

### ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-1701

2

# TABLE OF CONTENTS

**INTRODUCTION** ──────────────────── 4

**PARTIES** ──────────────────────── 4

**JURISDICTION & VENUE** ───────────── 5

**FACTS** ──────────────────────── 5
*Business of Unclaimed Property* .................................................. 5
*Finders are Entirely Unnecessary* ................................................ 6
*Finders are Not Exempt from UDAP* .............................................. 8
*Mr. DeSimone's Property* ....................................................... 9

**CLASS** ──────────────────────── 10
*Class Definition (¶ 38)* ......................................................... 10
*Numerosity (¶ 39)* ............................................................ 10
*Commonality (¶ 40)* .......................................................... 10
*Typicality (¶ 41)* ............................................................. 11
*Adequate Representation (¶ 42)* ................................................ 11
*Fair and Efficient (¶¶ 43 to 49)* ............................................... 12

**COUNTS** ─────────────────────── 13
Count # 1. *Pennsylvania Unfair Trade Practices Consumer Protection Law* .............. 13
Count # 2. *Texas Deceptive Trade Practices–Consumer Protection Act* .................. 15

**JURY DEMAND** ──────────────────── 16

**RELIEF** ─────────────────────── 16

**EXHIBITS** ────────────────────── 17
Exhibit A. *Past Due Invoice* ..................................................... 18
Exhibit B. *Final Invoice Threatening Collections* .................................. 21
Exhibit C. *Application For Certificate Of Finder Registration* ........................ 24

Case ID: 191200218

## INTRODUCTION

Plaintiff Dominick DeSimone, on behalf of himself and all others similarly situated, by and through his undersigned counsel, hereby brings this action for **damages and injunctive relief** against Paul Hashim and U.S. Claims Services, alleging they have violated state Unfair or Deceptive Acts or Practices (UDAP) laws—specifically the Pennsylvania Unfair Trade Practices Consumer Protection Law (UTPCPL), 73 P.S. §§ 201–1 *et seq.* and Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.* —through deception and misrepresentation causing individual property owners to believe that their services were required to recover unclaimed property that was escheated to the state, and therefore allege as follows:

## PARTIES

1. Plaintiff **Dominick DeSimone**, on behalf of himself and all others similarly situated, is an adult individual who resides at 845 Cross Street, Philadelphia, Pennsylvania, 19147. Mr. DeSimone had unclaimed property that was escheated to the Commonwealth of Pennsylvania.

2. Defendant **U.S. Claims Services**, Inc. is a Texas Corporation (#0802905239) with a principal place of business at 3801 Pegasus Drive #101, Bakersfield, California, 93308. U.S. Claims Services, Inc. seems to operate under a multitude of names currently and in the past, including: New Deal Development, Inc; Payne Richards & Associates; Joseph Richards & Associates; among others. U.S. Claims Services (and the associated companies) are, upon information and belief, merely parts of a single enterprise, which is operated for the benefit of– and dominated by– Mr. Hashim and his family.

3. Defendant **Paul R. Hashim** is an adult individual who is believed to reside at 852 Lombardy Court, Fort Worth, Texas, 76122. Mr. Hashim is listed as the sole director and executive of Defendant U.S. Claims Services. Mr. Hashim is also a 'Finder' registered with the Pennsylvania Treasurer (# 09801131-0315).

4

## JURISDICTION & VENUE

4. This Court has unlimited original jurisdiction under 42 Pa. C.S. § 931 (a), and venue is proper as the transaction or occurrence out of which this cause of action arose was via mail addressed to– and received by– a resident of Philadelphia County. Pa. R.C.P. No. 2179.

5. This Court has specific personal jurisdiction over the Defendants because both have affirmatively established and maintained contacts with the Commonwealth of Pennsylvania in registering with the Pennsylvania Department of Treasury and regularly– and continuously– solicit Pennsylvanians to utilize their services.

6. Based upon representations by Counsel for the Defendant U.S. Claims Services that it is a "not a large company, but is a small family-owned business," this action is not subject to federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 (d), as the amount-in-controversy does not exceed $5,000,000.

## FACTS

### Business of Unclaimed Property

7. Defendants Paul Hashim and U.S. Claims Services are "finders" engaged in the business of connecting property owners with their unclaimed property escheated to the state.

8. Defendants identify Unclaimed Property by querying the various statutorily-designated agencies that receive it, normally the state Department of Treasury. Once the Defendants have identified Unclaimed Property of sufficient value to be of interest in their business, they then 'locate' the property owner using commonly available tools like Intellius People Search and/or LexisNexis Public Records.

9. Defendants then contact the property owners, where they notice the owner of the unclaimed property and provide a form to complete in order to recover it. The form is actually a contract between the property owner and Defendant U.S. Claims Services, that claims to provide "services, including but

not limited to: ordering/providing proper forms, answering any questions, and following up with the claim status" in exchange for a portion (sometimes exceeding 30%) of the unclaimed funds.

10.   Once the property owners complete the contract, have it notarized, and return it, the Defendants then complete the claim for the property owners.  In most states, the full value of the unclaimed property monies are forwarded directly to the property owner (and is not received by the Defendants). After the monies are received, the Defendants then submit an invoice to the property owner for their fee; any unpaid fees are submitted to a collections agency.

### Finders are Entirely Unnecessary

11.   Nowhere does Defendant U.S. Claims Services disclose in their contract that their services are un-necessary, or that the property-owner can recover their unclaimed monies **without any fees** and their entire business model is based upon the property-owners mistaken belief that the finders services are necessary.

12.   However, it is extremely easy for a property owner to locate and claim property on their own, simply by contacting their appropriate state treasurer. Every state maintains a web-site, and the National Association of Unclaimed Property Administrators, an organization of the state treasurers and agencies responsible for the escheated funds—maintains a web-site providing direct links and instructional information on collecting their property at unclaimed.org.

13.   Each state also maintains an office that is open during business hours and able to field property-owners' questions and provide information on their claim. Most (if not all states) also provide a way to automatically track the status of their claims.

14.   For example, the Pennsylvania Department of Treasury (http://www.patreasury.gov/uncla imed-property/) will allow an individual via their web-site to search for unclaimed property and generate the necessary claim form to recover the money, which can be accomplished in minutes by the property owner. Pennsylvania Treasury provides a telephone number (800) 222-2046, staffed

6

during normal business hours, where property owners can ask questions and receive assistance, as well as an online portal on that same web-site where they are able to input a claim number or web inquiry ID which will allow them to check the status of the claim.

15. Ultimately, none of the alleged 'services' offered by Defendant U.S. Claims Services are needed by the property owner: all of the services they provide (forms, questions, and status) are freely provided by the various State agencies holding the unclaimed property.

16. In fact, Defendants can not claim that their business is not based in deception, as they have been the subject of numerous Better Business Bureau complaints and newspaper articles.

17. Additionally, Defendant Hashim's brother, Aaron Hashim—who purported to be owner of their pre-decessor company, New Concepts Development Company (d/b/a "U.S. Claims Services")—was interviewed by the Los Angeles Times in 2014. David Lazarus, *Firm Charges Fee For Refund Data You Can Get Free*, Los Angeles Times (06/30/2014), www.latimes.com/business/la-fi-lazar us-20140701-column.html.

18. In that interview, Aaron Hashim admitted **many people pay a fee to his companies because they have no idea they often can get their money themselves for free** and stated: "[i]f we told people where to go, we'd never get a call back." *Id.*

19. In that same 2014 article, the Los Angeles Times wrote: "No one in their right mind would pay a private company to perform a relatively simple task that anyone could do for nothing" and further "[the Hashims'] business model rests almost entirely on giving clients the false impression that they can't get the money without his help." *Id.*

20. Based upon the representations of Defendant Hashim's brother—believed to be still involved in the business–the Defendants cannot claim that their business model is not based on knowingly deceptive practices.

Case ID: 191200218

### *Finders are Not Exempt from UDAP*

21. While several states, including Pennsylvania, have some regulation of finders, it is minimal and primarily focus on controlling limiting the fee that can be charged and preventing fraudulent claims made without the authorization of the property-owner.

22. Pennsylvania regulates finders as part of their unclaimed property laws, 72 P.S. §§ 1301.11 *et seq.*, which requires unclaimed property finders to register with the Pennsylvania State Treasurer, sets the necessary contents for a finder agreement, and fix the maximum recovery for the finder at 15%.

23. One of the requirements of the any agreement is specifically identifying the "name, address, and telephone number" of the finder, as well as their valid certificate of registration number. § 1301.11 (g).

24. The Pennsylvania Treasurer is empowered to make regulations under this law, and has prescribed an application with instructions advising: "all individuals who operate as finders in Pennsylvania need to obtain a finder registration number even if they work for the same company." *Exhibit C* at 1.

25. Upon information and belief, Defendant U.S. Claims Services has one person registered as a 'Finder' with the Pennsylvania Treasurer: Defendant Paul Hashim.

26. Nowhere in the relevant laws are finders exempted from state consumer protection requirements, nor are their duties to properly inform consumers modified in any way.

27. Further, Defendants can not claim that their practices have the imprimatur of the Pennsylvania State Treasurer: "Nothing in this section shall be construed to prevent an owner from asserting at any time that any agreement to locate or reveal abandoned and unclaimed property reported to the State Treasurer is based on an excessive or unjust consideration." § 1301.11 (j).

*Mr. DeSimone's Property*

28. In early April 2019, Mr. DeSimone was contacted by Defendant U.S. Claims Services, advising him that Defendants had identified unclaimed property belonging to him in the value of $469.10.

29. The contract that Defendant U.S. Claims Services sent complied with the requirements of § 1301.11 (g), and identified Defendant Paul Hashim as the registered finder. However, it is worth note that the email address on the invoices was not to Paul Hashim, but rather a Ms. Shirley Wysinger (who is not registered with the Pennsylvania Treasurer as a Finder).

30. At no point did Mr. DeSimone know or suspect that Defendant U.S. Claims Services' services were unnecessary or that he could recover his unclaimed property himself. Therefore, Mr. DeSimone completed, signed, and had-notarized, believing it to be necessary to recover his monies.

31. In fact—as he lives on a modest income with substantial debt—had Mr. DeSimone known that he could recover his money without using the Defendants' services, he certainly would have.

32. Defendant U.S. Claims Services thereafter submitted Mr. DeSimone's claim to the Pennsylvania Treasurer and the full amount of monies was sent to Mr. DeSimone, pursuant to Pennsylvania laws.

33. Several months after recovering his money Mr DeSimone began receiving invoices from Defendant Payne for $70.36. Mr. DeSimone did not initially recall the reason for the invoice and was confused by its statement: "Your prompt payment is appreciated so we may continue to search and locate any additional monies owed to you." *Exhibit A.*

34. Mr. DeSimone spoke to his brother about the invoice, who advised him that it was a scam and he could recover unclaimed property himself for free. However, that jogged Mr. DeSimone's memory whereupon he recalled that Defendant U.S. Claims Services had contacted him regarding his monies earlier that year.

Case ID: 191200218

35.  Mr. DeSimone was therefore upset that he had been deceived and was being charged for something he could have– and would have– done himself for free. He therefore ignored the first and second notices, believing that was part of the Defendants' scam, that they were merely trying to collect fraudulent debt, and if he ignored them they would go away.

36.  However, Mr. DeSimone received another invoice stamped 'FINAL NOTICE' which stated: "You have a legally binding contract with out company and have failed to remit payment as agreed. If your payment is not received within 10 days, this account will be turned over to our collections agency for legal action which may result in additional costs to you." *Exhibit B.*

37.  Thereafter, Mr. DeSimone spoke to counsel regarding this issue.

## CLASS

38.  Plaintiff brings this action as a class action pursuant to Pa. R. Civ. P. 1702, 1708, and 1709 on behalf of themselves and the following class:

> All persons nationwide that were solicited– and had successful claims to recover personal, family or household property– for which monies were invoiced– or debited– by Defendant U.S. Claims Services between January 11th 2018 and present.

39.  The members of the class are so numerous that joinder of all members is impractical. Plaintiffs do not know the number of class members that exist however it is estimated to be more than one-thousand. However, the precise number of class members and their identities can be ascertained from the records of Defendants. It would be impracticable to individually join these plaintiffs without the use of a class action lawsuit.

40.  The representative plaintiff's claims raise questions of law and fact common to all class members. Among the questions of law and fact common to the class are the following:

 (a)  Did the Defendants know their services (e.g. "ordering/providing proper forms, answering any questions, and following up with the claim status") were of limited to zero value?

(b) Did the Defendants solicitation represent their services as 'needed' and/or lack information necessary to evaluate the value of Defendants' 'services'?

(c) Did the Defendants know at the time of their solicitation that their services were of dubious value yet still misrepresented their services as needed and/or failed to disclose that information to induce the transaction with Plaintiffs and the proposed Class?

(d) Does Defendants conduct fall within the catch-all provision as "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" under UTPCPL § 201-2 (4) (xxi)?

(e) If Defendants complied with state law regulating finders of unclaimed property does that otherwise exempt them from UDAP statutes?

(f) Did Defendant Paul Hashim personally participate in these unfair or deceptive acts or practices and therefore be subject to personal liability without the shield of corporate limited liability?

(g) Does Defendant U.S. Claims Service exist primarily for the benefit of- and which is dominated by- Defendant Paul Hashim and family and is therefore subject to the veil-piercing doctrine?

41. The claims of the representative plaintiff are typical of, if not identical to, the claims of each member of the class because the representative plaintiffs and all class members were solicited by- and contracted with- Defendants to recover their unclaimed property without being provided necessary information to evaluate the nature of these services—specifically that property-owners can quickly, easily, and **freely** recover their property from the state—which was known by the Defendants at the time and withheld in order to induce them into the transaction. Any individual variation between the representative plaintiff and an absent class member is minimal and will not effect the ability of the representative plaintiff to fairly represent the class.

42. The representative plaintiff will fairly and adequately protect the interests of all class members. They have retained competent counsel who has experience in complex litigation, and knowledge of consumer protection laws, who will prosecute this action vigorously. Neither representative plaintiff

11

not their counsel have any interests antagonistic to or in conflict with the class; their interests are an-

tagonistic to the interests of the defendants; and they will vigorously pursue the claims of the class.

Representative plaintiffs have adequate financial resources to vigorously pursue this action, includ-

ing an agreement by their counsel to prosecute this action on a contingent basis and to advance the

reasonable and necessary costs and expenses of litigation.

43.   A class action provides a fair and efficient method for adjudication of the controversy.

44.   The questions of law or fact common to the class members predominate over any questions affecting

only individual members. The common questions set forth above (¶ 40) will affect all class members

alike and predominate over any individual issues that could be present, as the resolutions of those

are the essential elements of the cause of action that may be proven through simultaneous class-wide

evidence.

45.   There are an unknown member of class members, but believed to be more than one-thousand, and

their claims are substantially identical. The case presents no unusual management difficulties. The

claims are ideally suited to class treatment, as the claims involve matters of consumer protection law

and the size of the class is too large for individual litigation, but not so large as to present an obstacle

to the manageability as a class action.

46.   The prosecution of separate actions by individual members of the class would, as a practical matter,

impair or impede the ability of others who are not parties to the individual actions to protect their

interests, and defendants could be confronted with inconsistent standards of conduct.

47.   To plaintiff's knowledge, no other cases have been brought against Defendant U.S. Claims Services

concerning the class members' claims. Upon information and belief, any litigation involving Defen-

dant U.S. Claims Services by putative class members would have been defensive in nature—that is,

defending themselves against Defendant U.S. Claims Services or their collections agency's attempt

to pursue alleged debts. No such litigation was revealed, but would be revealed through discovery of

the Defendants.

12

48. This Court is an appropriate forum to concentrate all litigation respecting class member claims. As the class members would be distributed widely throughout the nation, there is no significant nexus to the defendants' place of incorporation or principal place of business, and Defendants have indicated they intend to rely on Pennsylvania finders law, §§ 1301.11 *et seq.*, for their defense. Defendants also seem to conduct a significant amount of their business within Pennsylvania, of which this Court sits in the most populous city of. This Court has substantial experience with complex- and class-action-litigation, and the judicial resources to effectively manage it. Therefore, there is no better or more appropriate forum.

49. While the individual damages at issue are not large, they are not so small in relation to the expense and effort of administering the action. Upon information and belief the average class member's claim is between $100 and $1000. Further, this suit seeks both damages and injunctive relief, and any expense of this suit is justified by the prevention of future harm to the public.

## COUNTS

### Count # 1
### Pennsylvania Unfair Trade Practices Consumer Protection Law
73 P.S. § 201–1 *et seq.*

50. Plaintiff incorporates by reference ¶¶ 1 to 49 above as if fully set forth herein.

51. Plaintiff—individually and on behalf of the proposed class—alleges Defendants engaged in conduct unlawful under the Pennsylvania Unfair Trade Practices Consumer Protection Law (UTPCPL), 73 P.S. § 201–1 *et seq.*

52. Defendants engaged in this unlawful conduct through their solicitations to the rightful owners of unclaimed property, where they fail to disclose that the services they provide are unnecessary and freely available from the state that is holding the property.

53. Defendants induced property-owners to enter into contracts where the Defendants would be paid a

Case ID: 191200218

percentage of the recovered amounts in exchange for their services of dubious value (e.g. "ordering/providing proper forms, answering any questions, and following up with the claim status").

54. All "services" provided by the Defendants are freely available from the state holding the property and offer no real value or advantage to the property-owner.

55. The UTPCPL allows Private Actions for "[a]ny person who purchases [] services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or person, as a result of the use or employment by any person of a method, act or practice declared unlawful by [UTPCPL § 201-3], may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater." UTPCPL § 201-9.2 (a).

56. Plaintiff and members of the proposed Class are "person[s]" as defined by UTPCPL § 201-2 (2).

57. Plaintiffs and members of the proposed Class have suffered an ascertainable loss in the Defendants have enforced- or attempted to enforce- a contract entered into through deception which resulted in either a loss of monies to- or an outstanding debt owed by- the plaintiff and class members.

58. Defendants used "unfair or deceptive acts or practices" declared unlawful by UTPCPL § 201-3, including both "[k]nowingly misrepresenting that services . . . are needed if they are not needed" and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." UTPCPL § 201-2 (4) (xv) & (xxi).

59. Defendants Hashim and U.S. Claims Services are also "person[s]" as defined by UTPCPL § 201-2 (2).

60. Under the DTPCPA, Plaintiffs and members of the proposed Class are entitled to economic damages, subject to trebling, § 17.50 (b) (1), injunctive relief, § 17.50 (b) (2), attorney's fees, § 17.50 (d), and any other relief the Court deems proper, § 17.50 (b) (4).

61. For violations of the UTPCPL, Plaintiffs and members of the proposed Class are entitled to actual damages, subject to trebling (but in no circumstances less than $100), attorney's fees, costs and any other relief the Court deems necessary or proper. § 201-9.2 (b).

14

Count # 2

**Texas Deceptive Trade Practices–Consumer Protection Act**

Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.*

62. Plaintiff incorporates by reference ¶¶ 1 to 49 above as if fully set forth herein.

63. Plaintiff—individually and on behalf of the proposed class—alleges Defendants engaged in unlawful and deceptive conduct under the Texas Deceptive Trade Practices-Consumer Protection Act (DT-PCPA), Tex. Bus. & Com. Code §§ 17.41 *et seq.*

64. The DTPCPA allows consumers to initiate an action for "the use or employment by any person of a false, misleading, or deceptive act or practice that is: (A) specifically enumerated in [DTPCPA § 17.46 (b)]; and (B) relied on by a consumer to the consumers detriment[.]" DTPCPA § 17.50 (a).

65. Defendants engaged in unlawful "false, misleading, or deceptive acts or practices", DTPCPA § 17.46 (a), by "failing to disclose information concerning [] services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;" DTPCPA § 17.46 (b) (24).

66. Plaintiff and members of the proposed Class are "consumer[s]" as defined by DTPCPA § 17.45 (4).

67. Plaintiff and members of the proposed Class have suffered "economic damages" as defined by DT-PCPA § 17.45 (11) in that Defendants have enforced– or attempted to enforce– a contract entered into through deception which resulted in either a loss of monies to– or an outstanding debt owed by– the plaintiff and class members.

68. Plaintiff and members of the proposed Class relied upon Defendants deception to their detriment under § 17.50 (a), as they were induced into– and entered– a fraudulent and deceptive contract with the Defendants due to the Defendants failing to disclose essential information that the services were either worthless or nearly so.

15

69. For violations of the DTPCPA, Plaintiffs and members of the proposed Class are entitled to economic damages, subject to trebling, § 17.50 (b) (1), injunctive relief, § 17.50 (b) (2), attorney's fees, § 17.50 (d), and any other relief the Court deems proper, § 17.50 (b) (4).

## JURY DEMAND

For any issues so triable, Plaintiff hereby demands a jury trial.

## RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, demand that this Court enjoin Defendants Hashim and U.S. Claims Services (d/b/a Payne Richards & Associates), and any related or successor entities by requiring them in their solicitations to disclose that their services are unnecessary, and provide clear and conspicuous instructions for the property-owner to file their claim directly with the appropriate state should they choose to do so.

Further, Plaintiffs demand that judgment be entered in the favor of the Plaintiff DeSimone, on behalf of himself and all others similarly situated, against Defendants Hashim and U.S. Claims Services in an amount in excess of $50,000 including damages, statutory trebling, attorneys' fees, costs of suit and any other relief this Court may deem just and proper.

Respectfully Submitted,

**Andrew B. Austin,** Esq.
Pennsylvania Bar # 323768
*Attorney for Plaintiff and Proposed Class*

P.O. Box # 54628
Philadelphia, Pennsylvania 19148
+1 (610) 656-1956
austin@stackhousegroup.com

16

## VERIFICATION OF DOMINICK DESIMONE

I, Dominick DeSimone, hereby state that I am a Plaintiff in this action and declare as follows: I have reviewed this Complaint, and all statements and information contained within are true and correct to the best of my knowledge, information, and belief. Further, I understand that the statements in this Complaint are subject to the penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsification to authorities).

**Dominick DeSimone**

DATE: 11-26-19

17

# Exhibit A

Past Due Invoice

Case ID: 191200218

*Payne Richards*
**& Associates**

3801 Pegasus Dr, suite 101
Bakersfield, CA 93308

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/17/2019 | 9896080 |

## PAST DUE NOTICE

| Pay By |
|--------|
| 10/18/2019 |

**Bill To**

DOMINICK DESIMONE
845 CROSS ST
PHILADELPHIA, PA 19147-6404

| Terms |
|-------|
| 15 DAYS |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Pennsylvania #9896080 | 70.36 | 70.36 |
| | Over 40 billion dollars remains unclaimed nationwide. Your prompt payment is appreciated so we may continue to search and locate any additional monies owed to you. | | |
| | PAYMENT OPTIONS: Online - www.prclaims.com Telephone - 1-800-995-2416 option #3 Check or money order by mail | | |

## PAYABLE IMMEDIATELY UPON RECEIPT

**Total** | $70.36

| Phone # | Fax # | E-mail |
|---------|-------|--------|
| 1-800-995-2416 | 1-661-399-1201 | shirleyw@usclaimsservices.com |

Exhibit A

19

Case ID: 191200218



**I.**

This agreement into by and between <u>Dominick Desimone</u> hereinafter referred to us "Claimant," and Payne Richards & Associates, hereinafter referred to as "Agent." Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.

**II.**

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s): <u>DOMINICK DESIMONE</u>
Owner's Reported Address: <u>845 CROSS ST, PHILADELPHIA, PA</u>
Reported By: <u>ARAMARK</u>
Property Type: <u>WAGES; PAYROLL UNCLAIMED</u>
Amount: <u>$469.10</u>
Property ID No: <u>24159865</u>
Payne Richards & Associates Reference No: <u>9896080</u>

**III.**

In consideration of Agent's reasonable efforts in providing service, including but not limited to, ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of 15% of the amount recovered.

**IV.**

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

**V.**

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

**VI.**

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered and all fees are paid. Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent: <u>Payne Richards & Associates.</u>  Address: <u>3801 Pegasus Drive Suite 101 Bakersfield, CA 93308</u>

Daytime Phone: <u>(661) 399-1108</u>    Date: <u>3/28/2019</u>                                      _Paul Hishi_

Agent's Tax ID No.: <u>EIN# 05-0614871</u>  Registration No. 0980131-0315    Agent's Signature:

Print Name: _DOMINICK DESIMONE_                 Date: _4/17/19_

Address: _845 CROSS ST Phila Pa 19147_

E-mail:                                      Daytime Phone: _267-444-1576_

Signature: _Dominick DeSimone_               Relationship: ☑Self ☐Heirs ☐POA ☐Executor

<u>PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY PUBLIC</u>

State of _PA_
County of _Phila_

Before me, the undersigned authority, on this day personally appeared _DOMINICK DESIMONE_ ; known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS _17th_ DAY OF _April_ , 20 _19_

_Celeste Cerino_
Notary Public in and for the State of _PA_
My commission expires: _6/2/22_

┌─────────────────────────────────────┐
│ Commonwealth of Pennsylvania - Notary Seal │
│ CELESTE CERINO, Notary Public │
│ Philadelphia County │
│ My Commission Expires June 2, 2022 │
│ Commission Number 1296191 │
└─────────────────────────────────────┘

3801 Pegasus Drive, Suite 101, Bakersfield, CA 93308 • tel (661) 399-1108 • www.PRClaims.com

Exhibit A                                                                                        20

# Exhibit B

Final Invoice Threatening Collections

21

*Payne Richards*
**& Associates**

3801 Pegasus Dr, Suite 101
Bakersfield, CA  93308

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/17/2019 | 9896080 |

**Bill To**

DOMINICK DESIMONE
845 CROSS ST
PHILADELPHIA, PA 19147-6404

**FINAL NOTICE**

| Pay By | Terms |
|--------|-------|
| 11/5/2019 | 10 DAYS |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | Pennsylvania #9896080 | 70.36 | 70.36 |
| | | | |
| | You have a legally binding contract with our company and have failed to remit payment as agreed.  If your payment is not received within 10days, this account will be turned over to our collections agency for legal action which may result in additional costs to you.<br>If you have made your payment, please disregard this notice and THANK YOU. | | |
| | | | |
| | PAYMENT OPTIONS:<br>Online – www.prclaims.com<br>Telephone – 1-800-995-2416 option #3<br>Check or money order by mail | | |

| **PAYABLE IMMEDIATELY UPON RECEIPT** | **Total** | **$70.36** |
|---|---|---|

| Phone # | Fax # | E-mail |
|---------|-------|--------|
| 1-800-995-2416 | 1-661-399-1201 | shirleyw@usclaimsservices.com |

Exhibit B

22



**Payne Richards & Associates**

**I.**

This agreement into by and between <u>Dominick Desimone</u> hereinafter referred to as "Claimant," and Payne Richards & Associates, hereinafter referred to as "Agent." Claimant authorizes Agent to communicate on his/her behalf and provide assistance during the recovery process.

**II.**

The Agent through his/her efforts has located Claimant, who may be entitled to the assets in the possession of the State Treasurer of Pennsylvania, 129 Finance Building, Harrisburg, PA 17120 as described below:

Owner's Name(s): <u>DOMINICK DESIMONE</u>
Owner's Reported Address: <u>845 CROSS ST, PHILADELPHIA, PA</u>
Reported By: <u>ARAMARK</u>
Property Type: <u>WAGES; PAYROLL UNCLAIMED</u>
Amount: <u>$469.10</u>
Property ID No: <u>24159865</u>
Payne Richards & Associates Reference No: <u>9896080</u>

**III.**

In consideration of Agent's reasonable efforts in providing service; including but not limited to, ordering/providing proper forms, answering any questions and following up with claim status, Claimant agrees to pay Agent a fee of 15% of the amount recovered.

**IV.**

As additional consideration, Claimant will fully assist and cooperate with Agent in recovering the funds.

**V.**

Agent and Claimant agree that in the event Claimant is not entitled to assets described above and such assets are not recovered, there is no obligation on either party to the other, all expenses being borne by the Agent.

**VI.**

This agreement is valid for (1) one year from the date signed by the Claimant or until assets are recovered and all fees are paid. Claimant agrees to work exclusively with Agent to recover assets described herein during the term of this agreement.

Agent: <u>Payne Richards & Associates</u>  Address: <u>3801 Pegasus Drive Suite 101 Bakersfield, CA 93308</u>

Daytime Phone: <u>(661) 399-1108</u>   Date: <u>3/28/2019</u>

Agent's Tax ID No.: <u>EIN# 05-0614871</u>  Registration No. <u>0980131-0315</u>  Agent's Signature: _Paul Stahl_

Print Name: <u>DOMINICK DESIMONE</u>  Date: <u>4/17/19</u>

Address: <u>845 CROSS ST Phila Pa 19147</u>

E-mail: _____  Daytime Phone: <u>267-449-1576</u>

Signature: _Dominick DeSimone_   Relationship: ☑Self ☐Heirs ☐POA ☐Executor

**PLEASE SIGN THIS AGREEMENT IN THE PRESENCE OF A NOTARY PUBLIC.**

State of <u>PA</u>
County of <u>Phila.</u>

Before me, the undersigned authority, on this day personally appeared <u>DOMINICK DeSimone</u> ; known to me to be the person whose name is subscribed to the foregoing Standard Recovery Agreement, who on oath stated to me that he freely and voluntarily executed the same purposes therein expressed, and acknowledged the same to be his free act and deed.

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS <u>17th</u> DAY OF <u>April</u>, 20<u>19</u>

_Celeste Cerino_

Notary Public in and for the State of <u>PA</u>
My commission expires: <u>6/2/22</u>

> Commonwealth of Pennsylvania - Notary Seal
> CELESTE CERINO, Notary Public
> Philadelphia County
> My Commission Expires June 2, 2022
> Commission Number 1296191

3801 Pegasus Drive, Suite 101, Bakersfield, CA 93308 • tel (661) 399-1108 • www.PRClaims.com

Exhibit B

23

# Exhibit C

Application For Certificate Of Finder Registration

24

Case ID: 191200218



# APPLICATION FOR CERTIFICATE OF FINDER REGISTRATION

Pennsylvania Fiscal Code Sections
1301.11, 1301.11(a), 1301.11(b) and 1301.11(c)

Exhibit C

25

Case ID: 191200218



## INSTRUCTIONS
## APPLICATION FOR CERTIFICATE OF FINDER REGISTRATION

All questions must be typewritten or written in black or blue ink. All answers must be legible. The Department will view illegible answers as blank answers. All questions must be answered completely.  If an answer is not applicable, indicate as much.

All supplemental answers must include the number of the corresponding question.

**Question 1.**  List the e-mail address and telephone number that will be used on your contracts unless you have a company.

**Question 2.**  This question must only be answered if you are operating as a finder from a business. Please be advised that all individuals who operate as finders in Pennsylvania need to obtain a finder registration number even if they work for the same company.  The finder registration number belongs to the individual not the business.

For example: five employees from ABC Finder Company operate as finders in Pennsylvania then five finder registration numbers must be issued. It does not matter where the employee is physically headquartered or where the claimants reside as long as the employee is in the business of finding property reported to Pennsylvania for claimants, they need to obtain a registration number.

**Question 3.**  If you answered yes, you must provide the information requested.

**Question 4.**  This includes a conviction or guilty plea in Pennsylvania as well as in another state or the federal jurisdiction. If the answer is yes, you must detail the crimes you pled guilty to or were convicted of as well as the circumstances surrounding the crimes.  You may include any extenuating circumstances that you believe Treasury should take into consideration when evaluating your application.

**Question 5-7.**  It is incumbent upon the applicant to answer these questions honestly.  If an applicant is unsure if a plea or conviction in another jurisdiction is applicable, the applicant should still disclose on a separate sheet of paper the plea or conviction and the circumstances surrounding such conviction.

No applicant should fail to disclose pleas or convictions because they believe such pleas or convictions were cleared from their criminal record. Often the records are not officially cleared and are still part of your criminal record. Failure to disclose may result in a denial.

**Question 8.**  An administrative agency is any agency of federal, state and local government that may investigate citizens for infractions of criminal or civil laws. For example, the Pennsylvania Department of State provides professional licenses and investigates infractions of both criminal and civil law.  Such investigations must be disclosed.

**Question 9.**  You must disclose the bankruptcy, make note of the circumstances surrounding the bankruptcy and the status thereof.

**Question 10.**  You must provide your finder agreement contract. This must be the finder agreement contract you will use for all property held by the Pennsylvania Treasury Department.  Please be advised it may be considered a violation of your registration if the agreement that you provide to your clients is different from the agreement submitted with your application and you failed to amend it with the Office of Investigations.

**Question 11.**  These character references are a must.

Exhibit C

26

Case ID: 191200218

## COMPLETED APPLICATION AND ACCOMPANYING FORMS

- You must include with your application the following:

    1. Application with all questions answers and all required supplemental sheets
    2. Recent full-face color photograph
    3. Copy of your driver's license or state issued identification card
    4. Original notarized character reference letters
    5. Copy of current contract that you used for Pennsylvania claimants
    6. Notarized Applicant Certification and Acknowledgement (last page of Application)

**TREASURY WILL ONLY EVALUATE AND PROCESS COMPLETE APPLICATIONS FOR REGISTRATION.** *Failure to completely answer questions or to provide supplemental information will cause your application to be deemed incomplete. Any incomplete applications will be returned to applicant without being processed.*

- **IF YOUR APPLICATION IS COMPLETE PLEASE SEND IT TO:**

    Office of Investigations 127 Finance Building
    Harrisburg, PA 17120
    PH – 717.787-1606

### For your information

- It takes an average of 60 days for Treasury to evaluate applications.
- If you receive a registration, it must be listed on all claim forms with which you are associated.

Exhibit C                                                                                                      27



# APPLICATION FOR CERTIFICATE OF
# FINDER REGISTRATION

Pennsylvania Fiscal Code Sections 1301.11, 1301.11(a), 1301.11(b) and
1301.11(c)

*Type or print using black or blue ink*

Pursuant to the Unclaimed Property Act, this Application for Certificate of Finder Registration ("Application") is to be completed by any person wishing to engage in any activity for the purpose of locating, delivering, recovering, or assisting in the recovery of unclaimed property, and receive a fee, compensation, commission, or other remuneration for such activity. A separate form must be completed and submitted by each and every individual seeking to engage in this activity for compensation. Upon the filing of the Application, the Pennsylvania Treasury Department ("Treasury") may investigate the applicant to verify the information provided and to determine the applicant's eligibility for a Certificate of Finder Registration.

All questions must be completed. All supplemental answers provided to Treasury on separate sheets of paper *must be type written* and include the number of the corresponding question. Please be advised that you must provide all required documentation before Treasury will begin processing your application. Your application will not be deemed complete and ready for review unless all required documentation is provided.

**Note: Confidential personal information may be accessed by Treasury employees in order to process, review and/or approve or deny your Application. The information requested is required for the processing of your Application, and if such information is not provided, Treasury may stop processing and/or deny your Application. By submitting an Application, you are providing your consent for Treasury employees to access confidential personal information for this purpose.**

1.   Name of Applicant: _____

     Home Address: _____

     City, State, Zip Code: _____

     Social Security Number: _____

     Telephone Number: _____   E-Mail Address: _____

2.   Company Name: _____

     Doing Business As: _____

     Company Address: _____

     City, State, Zip Code: _____

     Federal Tax ID Number: _____

     Telephone Number: _____   E-Mail Address: _____

*Certificate of Registration Application | Page 1 of 5*

Exhibit C                                                                                  28

3.  If you are a Pennsylvania resident, have you worked or resided outside Pennsylvania at any time during the preceding ten (10) years? If yes, provide on a separate sheet of paper your residential addresses outside Pennsylvania and the names, addresses, and telephone numbers of the employers for whom you worked.  Yes _____   No _____

4.  During the ten (10) year period immediately preceding submission of this Application, have you ever pled guilty to or been convicted of a felony in Pennsylvania or any other jurisdiction.  Yes _____   No _____   If yes, please explain on a separate sheet of paper the circumstances surrounding the conviction, which must be attached to this Application.

5.  During the ten (10) year period immediately preceding the submission of this Application, have you ever pled guilty to or been convicted of the following theft or theft related offenses under 18 Pa.C.S. Chapter 39 or its equivalent if committed in another jurisdiction (including federal):

    | | | | |
    |---|---|---|---|
    | a. | Theft by unlawful taking or disposition | Yes _____ | No _____ |
    | b. | Theft by deception | Yes _____ | No _____ |
    | c. | Theft by extortion | Yes _____ | No _____ |
    | d. | Theft of property lost, mislaid or delivered by mistake | Yes _____ | No _____ |
    | e. | Receiving stolen property | Yes _____ | No _____ |
    | f. | Theft of services | Yes _____ | No _____ |
    | g. | Theft by failure to make required disposition of funds received | Yes _____ | No _____ |
    | h. | Unauthorized use of automobiles and other vehicles | Yes _____ | No _____ |
    | i. | Retail Theft | Yes _____ | No _____ |
    | j. | Library Theft | Yes _____ | No _____ |
    | k. | Unlawful possession of retail or library theft instruments | Yes _____ | No _____ |
    | l. | Organized retail theft | Yes _____ | No _____ |
    | m. | Theft of trade secrets | Yes _____ | No _____ |
    | n. | Theft of unpublished dramas and musical compositions | Yes _____ | No _____ |
    | o. | Theft of leased property | Yes _____ | No _____ |
    | p. | Theft of motor vehicle | Yes _____ | No _____ |

    If you checked yes to any of the theft related offenses above, please explain the circumstances surrounding the conviction or plea on a separate sheet of paper, which must be attached to this Application.

    If you checked "no" to all of the offenses in 5, please read and initial after the following statement:
    *I hereby attest under Section 4904 of the Pennsylvania Crimes Code and penalty of perjury that I have never been convicted or pled guilty to any of the above-mentioned theft offenses in Pennsylvania or any other jurisdiction.* _____ initials

6.  During the ten (10) year period immediately preceding the submission of this Application, have you ever pled guilty to or been convicted of the following forgery or fraudulent related offenses as set forth in 18 Pa.C.S. Chapter 41 or its equivalent if committed in another jurisdiction (including federal):

    | | | | |
    |---|---|---|---|
    | a. | Forgery | Yes _____ | No _____ |
    | b. | Simulating object of antiquity, rarity, etc. | Yes _____ | No _____ |
    | c. | Fraudulent destruction, removal or concealment of recordable instruments | Yes _____ | No _____ |
    | d. | Tampering with records or identification | Yes _____ | No _____ |
    | e. | Bad checks | Yes _____ | No _____ |
    | f. | Access device fraud | Yes _____ | No _____ |
    | g. | Unlawful device-making equipment | Yes _____ | No _____ |
    | h. | Deceptive or fraudulent business practices | Yes _____ | No _____ |
    | i. | Deception relating to kosher food products | Yes _____ | No _____ |
    | j. | Deception relating to certification of minority business enterprise or women's business enterprise | Yes _____ | No _____ |

*Certificate of Registration Application | Page 2 of 5*

Exhibit C                                                                                           29

Case ID: 191200218

| | | | | |
|---|---|---|---|---|
| k. | Commercial bribery and breach of duty to act disinterestedly | Yes _____ | No _____ |
| l. | Rigging publicly exhibited contest | Yes _____ | No _____ |
| m. | Defrauding secured creditors | Yes _____ | No _____ |
| n. | Fraud in insolvency | Yes _____ | No _____ |
| o. | Receiving deposits in a failing financial institution | Yes _____ | No _____ |
| p. | Misapplication of entrusted property and property of government or financial institutions | Yes _____ | No _____ |
| q. | Securing execution of documents by deception | Yes _____ | No _____ |
| r. | Falsely impersonating persons privately employed | Yes _____ | No _____ |
| s. | Copying; recording devices | Yes _____ | No _____ |
| t. | Unlawful operation of recording device in motion picture theater | Yes _____ | No _____ |
| u. | Insurance fraud | Yes _____ | No _____ |
| v. | Washing vehicle titles | Yes _____ | No _____ |
| w. | Trademark counterfeiting | Yes _____ | No _____ |
| x. | Identity theft | Yes _____ | No _____ |

If you checked yes to any of the fraud related offenses above, please explain the circumstances surrounding the conviction or plea on a separate sheet of paper, which must be attached to this Application.

If you checked "no" to all of the offenses in 6, please read and initial after the following statement:
*I hereby attest under Section 4904 of the Pennsylvania Crimes Code and penalty of perjury that I have never been convicted or pled guilty to any of the above-mentioned forgery or fraudulent related offenses in Pennsylvania or any other jurisdiction.*
_____initials

7.  During the ten (10) year period immediately preceding the submission of this Application, have you ever pled guilty to or been convicted of the following perjury, false swearing, fraud or other related offenses as set forth in 18 Pa.C.S. Chapter 49 or its equivalent if committed in another jurisdiction (including federal):

| | | | | |
|---|---|---|---|---|
| a. | Perjury | Yes _____ | No _____ |
| b. | False swearing | Yes _____ | No _____ |
| c. | Unsworn falsification to authorities | Yes _____ | No _____ |
| d. | False alarms to agencies of public safety | Yes _____ | No _____ |
| e. | False reports to law enforcement authorities | Yes _____ | No _____ |
| f. | False reports of child abuse | Yes _____ | No _____ |
| g. | Witness or information taking bribe | Yes _____ | No _____ |
| h. | Tampering with or fabricating physical evidence | Yes _____ | No _____ |
| i. | Tampering with public records or information | Yes _____ | No _____ |
| j. | Impersonating a public servant | Yes _____ | No _____ |
| k. | Impersonating a notary public or holder of a professional or occupational license | Yes _____ | No _____ |
| l. | False identification to law enforcement authorities | Yes _____ | No _____ |
| m. | Failure to comply with registration of sexual Offenders requirement | Yes _____ | No _____ |
| n. | Failure to comply with registration requirements | Yes _____ | No _____ |

If you checked yes to any of the fraud related offenses above, please explain the circumstances surrounding the conviction or plea on a separate sheet of paper, which must be attached to this Application.

If you checked "no" to all of the offenses in 7, please read and initial after the following statement:
*I hereby attest under Section 4904 of the Pennsylvania Crimes Code and penalty of perjury that I have never been convicted or pled guilty to any of the above-mentioned forgery or fraudulent related offenses in Pennsylvania or any other jurisdiction.*
_____initials

Exhibit C                                                                                                          30

Case ID: 191200218

8.   Did you act as a finder in Pennsylvania previous to the registration requirement? Yes _____ No _____
If you answered yes to number 8, please answer the following questions:

    a.   Did you ever violate the Pennsylvania Disposition of Abandoned and Unclaimed Property Act, including charging clients and/or unclaimed property claimants more than 15% of the value of property?

        Yes _____ No _____. If yes, please explain the circumstances on a separate sheet of paper that must be attached to this application.

    b.   Have you ever been the subject of an investigation by a state, county or local administrative agency?
Yes _____ No _____. If yes, please explain the circumstances on a separate sheet of paper that must be attached to this application.

9.   Have you or has your business filed for bankruptcy in the last ten (10) years? Yes _____ No _____. If yes, please explain the circumstances and status of the bankruptcy on a separate sheet of paper that must be attached to this Application.

10.   Please submit a copy of your unclaimed property finder contract that will be provided to claimants.

11.   You must also provide Treasury with two character references along with a written statement from each. The written statements must be attached to this application and the character witnesses contact information must be completed below. Treasury may contact these witnesses when processing this Application. Please be advised that the character references may not include family members, current employees or subcontractors.

    a.   Character Witness Name: _____

        Address: _____

        City, State, Zip Code: _____

        Telephone Number: _____

    b.   Character Witness Name: _____

        Address: _____

        City, State, Zip Code: _____

        Telephone Number: _____

12.   I understand the following:

Should I be granted a registration to act as an unclaimed property finder in Pennsylvania, I will faithfully follow the Disposition of Abandoned and Unclaimed Property Act (72 P.S. § 1301.1 et seq.), any unclaimed property regulations set forth in the Pennsylvania Code, and any Bureau of Unclaimed Property policies. I understand that by law my fee must not exceed of fifteen (15%) of the value of the unclaimed property. I further understand that Treasury will both investigate my application and, if I am approved for a registration, may initiate an investigation for any allegation or complaint of misconduct. I understand that Treasury may revoke my registration in accordance with the provisions of the Disposition of Abandoned and Unclaimed Property Act. _____ (initials)

*Certificate of Registration Application | Page 4 of 5*

Exhibit C

31

Case ID: 191200218

**Mail:** (1) Application, (2) recent full-face color photograph, (3) a copy of your driver's license or state issued identification card (4) original, notarized character reference letters from above-listed references, and (5) copy of a current contract that you will use for Pennsylvania claimants[1] to:

Office of Investigations 127 Finance Building
Harrisburg, PA 17120
PH – 717-787-1606
Email – finderregistration@patreasury.gov

### Applicant Certification and Acknowledgement

I do hereby certify that I have not, during the ten year period immediately preceding the submission of this application, violated, been convicted, or pled guilty to any crimes enumerated in Chapters 39, 41 or 49 in the Pennsylvania Crimes Code as specified   above.

I further certify, under penalties of perjury, that all the information provided on this Application for Registration is true and correct, and all supporting documentation presented are original or true unaltered copies of the original documents.  I acknowledge that any false or perjured statement may subject me to criminal liability under Pennsylvania Crimes Code Section 4904 and Sections 1301.25 of the Disposition of Abandoned and Unclaimed Property Act.  I acknowledge that any false information, or the discovery of any disqualifying information, may be grounds for the denial or revocation of a certificate of registration.

I certify that I have read and will abide by the requirements of the **Disposition of Abandoned and Unclaimed Property Act.** I will hold the Commonwealth of Pennsylvania and Treasury Department, its officers and employees, harmless from any damages, losses, or claims of any kind resulting from my submission of this Application for Registration and any denial, or subsequent revocation, of the approval to engage in activities under the **Disposition of Abandoned and Unclaimed Property Act,** as well as any damages, losses, or claims of any kind arising from a finding that an agreement entered into pursuant to the **Disposition of Abandoned and Unclaimed Property Act** is invalid.

_____          _____
*Applicant's Signature*                                              *Date*

State of _____

County of _____

This Application for Registration was signed, in my presence, by Applicant, and sworn before me on this _____ day of _____, 20_____.

                                        Seal or Stamp

_____
*Notary Public Signature*

[1] Please be advised that any changes to your finder contract must be submitted as an amendment to your application for registration as long as you are a registered Pennsylvania finder.

*Certificate of Registration Application | Page 5 of 5*

Exhibit C                                                                                    32

Case ID: 191200218

Exhibit I

# MARSHALL DENNEHEY
## WARNER COLEMAN & GOGGIN

ATTORNEYS-AT-LAW    WWW.MARSHALLDENNEHEY.COM

A PROFESSIONAL CORPORATION

2000 Market Street, Suite 2300, Philadelphia, PA 19103
(215) 575-2600  Fax (215) 575-0856

Direct Dial:  (215) 575-2883
Email:  jpquinn@mdwcg.com

| | | |
|---|---|---|
| **PENNSYLVANIA** | | **OHIO** |
| Allentown | | Cincinnati |
| Doylestown | | Cleveland |
| Erie | | |
| Harrisburg | | **FLORIDA** |
| King of Prussia | | Ft. Lauderdale |
| Philadelphia | | Jacksonville |
| Pittsburgh | | Orlando |
| Scranton | | Tampa |
| **NEW JERSEY** | | **NEW YORK** |
| Mount Laurel | | Long Island |
| Roseland | | New York City |
| | | Westchester |
| **DELAWARE** | | |
| Wilmington | | |

March 16, 2020

**VIA ELECTRONIC MAIL**
Andrew B. Austin, Esquire
P.O. Box #54628
Philadelphia, PA 19148

> RE:    DeSimone v. U.S. Claims Services, Inc.
>           US EDPA No. 19-6150
>           Our File No.:  16800.00122

Dear Mr. Austin:

Thank you for speaking with me Friday afternoon concerning the above-referenced case.  As we discussed, my clients have received the Order and Opinion of Judge Pappert dismissing Mr. DeSimone's complaint against the Hashim family's company U.S. Claims Services, Inc., dba Payne Richards ("Payne Richards") and Mr. Paul Hashim, personally. Judge Pappert dismissed the claims against Payne Richards, with leave to amend, and the claims against Mr. Hashim outright without leave to amend.  The stated purpose of Mr. DeSimone's lawsuit was to permanently close the family business and to financially harm Mr. Hashim.

As we further discussed,  our clients have incurred nearly $100,000 in legal fees and costs in connection with this matter, as well as substantial personal and business damages, including but not limited to business and personal reputational harm, lost business opportunities and severe emotional distress.  These damages are still being incurred and are currently being calculated, but likely exceed one million dollars.  The lawsuit impacted Mr. Hashim's health, and both Payne Richards and Mr. Hashim were required to disclose the existence of the lawsuit, which further impacted their insurance rates and created a number of other unnecessary problems for Mr. Hashim and the family.

The Wrongful Use of Civil Proceedings Act (42 Pa.C.S. § 8351, *et seq*.) affords successful litigants the right to recover all damages related to an action brought without probable cause and for an improper purpose.  (42 Pa.C.S. § 8351.)  Damages recoverable under this statute include reputational harm, attorneys' fees and costs, specified pecuniary losses, emotional distress, and punitive damages.  (42 Pa.C.S. § 8353.)  Mr. Hashim and Payne Richards are each well within their rights to initiate such an action against you, your law firm, and your client Mr. DeSimone to recover the substantial costs and damages incurred due to Mr. DeSimone's lawsuit.

Nonetheless, our clients are willing to set their personal emotions aside and have offered a mutual settlement agreement and release with a waiver of costs to you, your law firm, and Mr. DeSimone for the purpose

Andrew Austin, Esq.
March 16, 2020
Page 2

of limiting the further costs of Mr. DeSimone's lawsuit.  The language of the settlement and mutual release will contain standard terms.

      As I noted during our call, this offer is set to expire on 5:00 pm Eastern Standard Time on Wednesday, March 18, 2020.  Please share this offer with your client and advise as to whether you and your client are willing to accept.  If we do not hear from you by the time and date referenced above, we will assume you and your client have rejected this offer and that Mr. Hashim and Payne Richards will be compelled to enforce their rights.  As we further discussed during the call, in my experience with these Wrongful Use cases, any such claim asserted against you and your client would most likely create an incurable conflict of interest, which would require your client to obtain separate counsel.

      Please note that I may be working remotely this week due to the current national emergency, but can nonetheless be reached by email or cell phone (484-354-8080).  We appreciate your prompt attention to this matter and please give us the courtesy of a response, either way, by our agreed deadline.

      Sincerely,

      *John P. Quinn*

      John P. Quinn

cc:     William Palmer, Esq.

JPQ
LEGAL/128634000.v1

Exhibit J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DOMINICK DESIMONE, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 19-6150 |
| U.S. CLAIMS SERVICES, INC., et al., | |
| *Defendants.* | |

**PAPPERT, J.**                                                              **May 20, 2020**

### MEMORANDUM

U.S. Claims Services told Dominick DeSimone that he had unclaimed property, specifically $469.10 in wages, in Pennsylvania.  He then entered into a contract with the company, pursuant to which U.S. Claims Services charged a fifteen percent fee for recovering DeSimone's money.  DeSimone now claims that he did not know that he could get his money back on his own by contacting the Pennsylvania Treasury.  He contends that he never would have contracted with the company and agreed to pay a fee for something he could have done himself for free.

DeSimone brings this putative class action against U.S. Claims Services and its employee Paul Hashim.[1]  The Court dismissed DeSimone's original Complaint for failing to state a plausible claim for relief, but granted leave to amend.  (Order, ECF No. 18.)  DeSimone has filed an Amended Complaint, in which he realleges violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law and brings a new claim for fraudulent inducement.  (Am. Compl., ECF No. 19.)  Defendants filed a

---

[1]     The Court detailed the case's factual background in a prior Memorandum.  *See* (Mem. Op., ECF No. 17).

Motion to Dismiss.  (ECF No. 20.)  The Court grants the Motion in its entirety for the reasons that follow.

## I

To survive dismissal under Federal Rule of Civil Procedure Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face."  *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption."  *Id.*

## II

Counts I and II of the Amended Complaint allege violations of the UTPCPL based on U.S. Claims Services' "fail[ure] to disclose that the services they provide are

unnecessary and freely available from the state that is holding the property." (Am. Compl. ¶¶ 69, 86.) In Counts III and IV, DeSimone alleges that Defendants engaged in fraudulent inducement and violated the UTPCPL when they "fraudulently misrepresented that Defendant Hashim was acting as a Finder for their unclaimed property but instead delegated those responsibilities in violation of Pennsylvania state law." (*Id.* ¶ 100; *see id.* ¶ 114.) The Court addresses the claims in turn.

A

1

Counts I and II of the Amended Complaint allege that Defendants engaged in deceptive conduct (Count I) and knowing misrepresentation (Count II) in violation of the UTPCPL. The UTPCPL is "a remedial statute intended to protect consumers from unfair or deceptive practices or acts" in the course of trade or commerce. *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp. 3d 378, 385 (E.D. Pa. 2019) (quoting *Balderston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001)). To state a claim for deceptive conduct under the UTPCPL's catch-all provision, a plaintiff must allege that (1) the defendant engaged in deceptive conduct; (2) the plaintiff justifiably relied on defendant's misrepresentation or deceptive conduct; and (3) the plaintiff was damaged by his justifiable reliance on the defendant's alleged conduct. *Clark v. Allstate Ins. Co.*, 2013 WL 1905147, at *6 (E.D. Pa. May 7, 2013); *see* 73 P.S. § 201-2(4)(xxi). To state a claim for knowing misrepresentation under the UTPCPL, the plaintiff must allege: (1) a material misrepresentation of an existing fact; (2) scienter; (3) justifiable reliance; and (4) damages. *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 413 (E.D. Pa. 2006); *see* 73 P.S. § 201-2(4)(xv).

3

When allegations underlying a UTPCPL claim involve a defendant's nondisclosure, the omission is actionable only if there is a duty to disclose. In other words, for silence to be actionable there must be a duty to speak. *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989). In Pennsylvania, the presence of a fiduciary or other confidential relationship exists "as [a] prerequisite to liability for omissions." *Silverstein v. Percudani*, 2005 WL 1252199, at *8, *13 (M.D. Pa. May 26, 2005) (dismissing UTPCPL claim where defendant had no duty to disclose) (quoting *Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F. Supp. 1185, 1187–88 n.1 (E.D. Pa. 1989)). *See also* Restatement (Second) of Torts § 551(2)(a) (explaining the duty to disclose arises when there is a fiduciary or confidential relationship between the parties).

The Court previously dismissed Counts I and II of DeSimone's original Complaint because he failed to allege plausible facts establishing the existence of a fiduciary or confidential relationship that would give rise to Defendants having a duty to disclose information. (Mem. Op. 10, ECF No. 17.) DeSimone now argues that his Amended Complaint sufficiently alleges the presence of a principal-agent relationship because the agreement he signed with U.S. Claims Services identified the company as his "Agent." (Am. Compl. ¶¶ 23–24; Ex. A.) DeSimone also alleges that the agreement gave Defendants "the legal power to authorize disbursement of [his money] from the state and bind [him] to that disbursement." (*Id.* ¶ 26.) Defendants, however, argue that these alleged facts are nonetheless insufficient to establish a confidential or fiduciary relationship. (Defs.' Mot. to Dismiss 15–16, ECF No. 20.) Because DeSimone's Amended Complaint still fails to plead sufficient facts establishing a

4

confidential or fiduciary relationship—which would in turn give rise to a duty to disclose—the Court dismisses Counts I and II with prejudice.

2

Pennsylvania courts recognize three categories of relationships between contracting parties: ordinary, arm's-length relationships; agency relationships; and confidential relationships. *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 577 (Pa. Super. Ct. 2006) (citing *Basile v. H & R Block, Inc.*, 761 A.2d 115, 1120 (Pa. 2000)). In some types of relationships, including agency relationships, a fiduciary duty exists as a matter of law. *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017) (listing "principal and agent, trustee and cestui que trust, attorney and client, guardian and ward, and partners" as examples). When a fiduciary duty does not exist as a matter of law, Pennsylvania courts nevertheless recognize the duty in the presence of confidential relationships where "the relative position of the parties is such that one has the power and means to take advantage of, or exercise undue influence over, the other." *Id.*

DeSimone argues that the contract he signed established an agency relationship because the document referred to U.S. Claims Services as the "Agent." (Am. Compl. ¶¶ 23, 24.) The labels used on paper to classify a relationship, however, are not dispositive. *See Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563 (W.D. Pa. 2017) (citing Restatement (Third) of Agency § 1.02)). Instead, Pennsylvania law requires the following three elements to establish an agency relationship: (1) the manifestation by a principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the mutual understanding that the principal is to be in control of the undertaking. *Basile*, 761 A.2d at 1120 (citing *Scott v. Purcell*, 415 A.2d 56, 60 (Pa.

5

1980)).  "[A]gency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary."  *Id.*  (quoting *Smalich v. Westfall*, 269 A.2d 476, 480 (Pa. 1971)).  The "distinctive feature of an agency relationship is the agent's power to affect the legal relationship of the principal with third parties." *Wisniski*, 906 A.2d at 577 (citing *Basile*, 761 A.2d at 1120).  DeSimone fails to adequately allege that the parties were in an agency relationship.  He asserts no facts indicating that he, as the purported principal, retained any control over U.S. Claims Services or Hashim in the recovery of his unclaimed funds.  By failing to plead facts indicating that DeSimone was "in control of the undertaking," he cannot sufficiently allege an agency relationship.[2]

 Despite DeSimone's failure to adequately plead an agency relationship, the third category of relationships—confidential relationships—also gives rise to fiduciary duties. "In the business context, a confidential relationship is formed 'only if one party surrenders substantial control over some portion of his affairs to another.'" *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 2009 WL 2526436, at *4 (E.D. Pa. Aug. 12, 2009) (quoting *In re Scott's Estate*, 316 A.2d 883, 886 (Pa. 1974)).  Because most "commercial contracts for professional services involve one party relying on the other party's superior skill or expertise," a fiduciary duty does not arise "merely because one party relies on and pays for the specialized skill or expertise."  *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 23 (Pa. Super. Ct. 2002).  Instead, the critical

---

[2] DeSimone also argues that the contract he signed necessarily established an agency relationship because Pennsylvania's Unclaimed Property Act requires that "a signed writing evidence some kind of agency relationship."  (Am. Compl. 27.)  The text of the UPA requires that "all agreements or powers of attorney" to recover unclaimed property comply with certain requirements, but nowhere in the Act does it specify that such an agreement between the property owner and finder constitutes a *per se* agency relationship.  *See* 72 P.S. § 1301.11(g).

6

question is whether circumstances exist such that the "parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Yenchi*, 161 A.3d at 820 (internal quotation marks and citation omitted.) The Pennsylvania Supreme Court has recognized that confidential relationships often arise in situations involving close personal or family relationships, or where one party's advanced age or disease limits his capacity to understand the transaction in question. *Id.* at 821.

DeSimone alleges that "Defendants profess[ed] their specialized expertise" and created the "impression that their services [were] essential and valuable" by holding themselves out as licensed professionals with ten years of experience. (Am. Compl. ¶ 22.) These factual allegations, however, are insufficient to plead the existence of a confidential relationship. Indeed, "[t]he superior knowledge or expertise of a party does not impose a fiduciary duty . . . or otherwise convert an arm's-length transaction into a confidential relationship." *Yenchi*, 161 A.3d at 823. DeSimone has alleged nothing more than Defendants' expertise; he fails to allege any facts showing he was overpowered or unduly dominated or influenced.

B

In Counts III and IV of Amended Complaint, DeSimone alleges for the first time a common law claim for "fraud/fraudulent inducement"[3] and additional violations of the

---

[3]     To state a claim for fraudulent inducement, a plaintiff must allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (citation omitted); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*, 951 F.2d 1399, 1411 (3d Cir. 1991) (explaining fraudulent misrepresentation claims and fraudulent inducement claims involve the same elements).

UTPCPL. In doing so, he alleges that Defendants fraudulently misrepresented that "Defendant Hashim was acting as Finder for [the] unclaimed property but instead delegated those responsibilities in violation of Pennsylvania state law." (Am. Compl. ¶ 100; *see id.* ¶¶ 113–14.) According to DeSimone, had he known that Hashim was delegating responsibilities to other employees in violation of Pennsylvania's Unclaimed Property Act, he would not entered into the contract. *See* (Am. Compl. ¶¶ 107, 118).

The crux of both of these claims involves DeSimone's theory that Defendants violated the UPA by delegating tasks to employees who were not registered finders in Pennsylvania. Under the UPA, a person may not, on behalf of another (1) "engage in any activity for the purpose of locating, delivering, recovering or assisting in the recovery of abandoned or unclaimed property," and (2) "receive a fee, compensation, commission or other remuneration for the activity" without first obtaining a certificate of registration from the Pennsylvania Treasury. 72 P.S. § 1301.11a(a).[4] According to DeSimone, Defendants unlawfully delegated tasks to two unregistered employees of U.S. Claims Services—Maria Muralles and Shirley Wynsinger. *See* (Am. Compl. ¶¶ 36–38). DeSimone first alleges that Muralles acted as an unregistered finder when, in 2015, she emailed staff at the Pennsylvania Treasury to inquire about an unidentified

---

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Petruska v. Gannan Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (explaining that a state law fraudulent misrepresentation claim must be pled with particularity under Rule 9(b)). To satisfy Rule 9(b)'s pleading requirements, the plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

[4]     To date, no Pennsylvania or federal court has interpreted or applied this section of the UPA.

8

individual's claim.  *See* (*id.* ¶ 36, Ex. G).[5]  The Muralles email exchange, which DeSimone attached to his Amended Complaint, occurred three years prior to him ever entering into an agreement with U.S. Claims Services.  *See* (*id.*)  DeSimone does not allege (nor could he) that she acted as an unregistered finder for either of his two unclaimed property agreements in 2018 and 2019.  *See* (*id.*; Exs. A, B).

DeSimone next alleges that Wynsinger "actually perform[ed] the responsibilities of a Pennsylvania 'finder'" for DeSimone's claims because the invoices he received included on them an email address for shirleyw@usclaimsservices.com.  (Am. Compl. ¶ 37, Exs. C, D.)  DeSimone fails to plausibly allege, however, any actions on Wynsinger's part in which she located, delivered, recovered or assisted in recovering DeSimone's unclaimed property, or that she received a fee for her activities.  *See* 72 P.S. § 1301.11a(a).  There mere inclusion of an email address on an invoice is insufficient to plausibly allege that any individual other than Hashim acted as DeSimone's unclaimed property finder.  Indeed, the only individual that DeSimone alleges solicited him to assist in the recovery of his unclaimed wages was Hashim, who DeSimone acknowledges is a registered finder in Pennsylvania.  (Am. Compl. ¶¶ 43, 48.)

DeSimone's inability to plead sufficient facts alleging that Defendants "illegally and impermissibly" delegated the responsibilities of a finder to unregistered individuals dooms both his fraudulent inducement and UTPCPL claims.  With respect to his fraudulent inducement claim, DeSimone fails to allege that Defendants misrepresented Hashim's role as the finder for his unclaimed property.  *See Bortz*, 729 A.2d at 560

---

[5]    In deciding a motion to dismiss, a court may consider documents attached to or submitted with the complaint without converting the motion into one for summary judgment.  *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

(explaining that to state a claim for fraudulent inducement, plaintiff must allege a representation that was made falsely). Without this misrepresentation, DeSimone's allegation that he would not have entered into the agreement "absent these false representations" cannot withstand a motion to dismiss. *See* (Am. Compl. ¶ 107.) It is for this same reason that his UTPCPL claim in Count IV also fails.[6]

III

A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has instructed district courts to "offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Because the Court has already granted DeSimone leave to amend his complaint once, any additional amendments would be futile.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.

---

[6] Although neither party raised the issue, Counts III and IV are also subject to dismissal under the economic loss doctrine. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)). Under this doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damages." *Excavation Techs. Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009) (internal quotation marks and citation omitted). Because the core of DeSimone's allegations in Counts III and IV is that Hashim did not fulfill his obligation of performance under the contract when he allegedly delegated responsibilities to unregistered finders, the economic loss doctrine bars these claims.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINICK DESIMONE, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION |
| U.S. CLAIMS SERVICES, INC., and PAUL HASHIM | NO. 19-6150 |
| *Defendants.* | |

## ORDER

**AND NOW**, this 20th day of May 2020, upon consideration of Plaintiff DeSimone's Amended Complaint (ECF No. 19), Defendants' Motion to Dismiss (ECF No. 20), Plaintiff's Response (ECF No. 22), and Defendants' Reply (ECF No. 23), it is hereby **ORDERED** that the Motion is **GRANTED**. Counts I – IV are **DISMISSED** with prejudice. The Clerk shall close this case.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.